Affirmed by published opinion. Judge AGEE wrote the majority opinion, in which Chief Judge TRAXLER joined. Judge DAVIS wrote a dissenting opinion.
OPINION
AGEE, Circuit Judge:
Arturo Castellanos conditionally pled guilty in the Middle District of North Carolina to conspiracy to distribute cocaine. His sole challenge on appeal is to the district court’s denial of his motion to suppress the cocaine, which had been found in *830 the gas tank of a Ford Explorer as the vehicle was being transported on a commercial car carrier. We agree with the government that Castellanos failed to prove he had a legitimate expectation of privacy in the vehicle, and we affirm the judgment of the district court.
I.
On September 20, 2010, Captain Kevin Roberts of the Reeves County, Texas, Sheriffs Department, was conducting a routine patrol at a truck stop near Pecos, Texas. He observed a Direct Auto Shippers (“DAS”) commercial car carrier at a fuel filling station, and became suspicious that one of the vehicles being transported on the car carrier, a Ford Explorer (the “Explorer”), bore a dealership placard in lieu of a regular license plate.
Upon questioning the driver of the car carrier about the Explorer, Roberts was provided shipping documents identifying the owner of the vehicle as Wilmer Caste-nada. The documents also reflected a trip origin in California with a final destination for delivery of the vehicle in Greensboro, North Carolina. Roberts attempted to contact Castenada using the phone number provided to DAS, but received no answer. He then attempted to verify the origin and destination addresses provided to DAS, but the California address was not associated with anyone bearing Castenada’s name, and the North Carolina address matched two unrelated businesses. When Roberts contacted those businesses, their representatives each stated they had never heard of Castenada and were not expecting delivery of a vehicle.
Unable to contact Castenada, Roberts asked the driver of the DAS car carrier for permission to search the Explorer. The driver consented, and Roberts opened the Explorer and began to search the interior of the vehicle. He immediately noticed “grass and stuff’ in the utility area, which, in his view was inconsistent with the Explorer coming from a dealership. He also noticed the “strong odor of Bondo,” a compound commonly used in the repair and after-market alteration of vehicles. (J.A. 38). Roberts observed fresh tool marks where the rear seats were anchored to the floor, indicating those had recently been removed or installed. When he pounded on the rear floorboard, Roberts noticed an inconsistency in the sound on the passenger side above the gas tank.
Roberts then inserted a fiber optic scope into the Explorer’s gas tank in order to peer into its interior. When he did so, Roberts observed several blue bags floating in the tank. He then asked the car carrier driver if he (Roberts) could take custody of the Explorer. The driver consented and Roberts, with other officers, took possession of the Explorer and transported it to another location for further examination. When Roberts and other officers examined the Explorer in more detail, they found that the gas tank had been opened and resealed with Bondo, and recovered 23 kilogram-sized bricks of cocaine with a street value of approximately $3 million.
Subsequently, DAS informed Roberts that someone claiming to be Castenada had been calling DAS to inquire about the delivery of the Explorer. Using new contact information for Castenada received from DAS, Roberts called the telephone number claiming to be an employee of a wrecker service in Texas. Roberts falsely informed the individual claiming to be Castenada that the driver of the DAS carrier had been arrested and his cargo impounded so that Castenada would be required to travel to Texas in order to claim the Explorer. A few days later Roberts learned that someone, later identified as Arturo Castellanos, had arrived locally and was waiting for a ride to the wrecker service to claim the Explorer.
*831 Police located and detained Castellanos, who had in his possession the title to the Explorer, the DAS tracking number for that vehicle, and a piece of paper bearing Roberts’ phone number from the earlier calls. Castellanos waived his Miranda[1] rights, and told Roberts that he was in the process of purchasing the Explorer from Castenada, who lived in North Carolina. He then explained that Castenada advised him to go from Castellanos’ home in' California to Texas to retrieve the Explorer, then drive it to Castenada in North Carolina where Castellanos would pay Caste-nada for the vehicle. Castellanos would then drive the Explorer back to California. After Roberts expressed considerable skepticism at his story,. Castellanos terminated the interview.
Police also seized two duffle bags that a co-conspirator (not party to this appeal) left at a local motel’s front desk. Castella-nos, who claimed to be traveling alone, denied that either of the bags belonged to him. When Roberts opened one of the bags, he found, in addition to other items, a contoured neck pillow. Feeling a foreign object inside the pillow, Roberts opened it and discovered a cellular telephone in a plastic bag. When Roberts turned the phone on, he found that the number of the telephone matched the number provided by DAS that he had been using to contact Castenada.
Castellanos and other individuals not party to this appeal were later indicted in the Middle District of North Carolina on one count of conspiracy to distribute five kilograms or more of a mixture containing a detectable amount of cocaine hydrochloride, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 846(b)(1)(A).
Prior to trial, Castellanos moved to suppress the items contained in the duffle bag and the cocaine found in the gas tank. The government’s evidence adduced at the suppression hearing consisted entirely of testimony from Roberts, who detailed the search and seizure of the vehicle and the subsequent investigation that lead to the arrest of Castellanos.
Notably, Castellanos did not introduce any evidence to show that he owned the Explorer at the time Roberts conducted the warrantless search or had permission to use the vehicle. Although Castellanos appeared in'Texas with a title document to the Explorer, he did not put the title into evidence or Otherwise attempt to demonstrate any "ownership or possessory interest in the vehicle. Castellanos’ out-of-court statements, as relayed by Roberts, made clear that Castellanos himself maintained that Castenada was a different person, insofar as he claimed the purchase of the Explorer from Castenada was an incomplete transaction. Castellanos made no showing that he and Castenada were one and the same person or that Castena-da was his alias.
After hearing • argument, the district court issued a short ruling from the bench. The court stated that
I’m going to deny [Castellanos’] motion as to both the duffle bags, and with regard to the automobile, which had been given over to a common carrier with addresses which were ascertained to be false addresses. There was no legitimate expectation of privacy at that point. The shipper’s address was false. The person who was to receive it was a false address.
(J.A. 72.)
The court did not make any findings of fact.
Prior to trial, Castellanos entered into a conditional plea agreement with the government and pled guilty to the sole count of the indictment, conspiracy to distribute *832 cocaine hydrochloride. Pursuant to Rule 11(a)(2) of the Federal Rules of Criminal Procedure, Castellanos reserved the right to appeal the district court’s adverse decision on his motion to suppress. Castella-nos was sentenced to 120 months’ imprisonment and noted a timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.
II.
The sole assignment of error raised by Castellanos on appeal is that the district court erred in denying his motion to suppress the evidence of the cocaine discovered in the gas tank of the Explorer.[2] The government rejoins, however, that as a threshold matter, Castellanos cannot challenge the search because he failed to show a reasonable expectation of privacy in the vehicle’s gas tank. If the government is correct, that issue is dispositive on appeal so we address it first.
We review de novo the district court’s legal conclusions on a motion to suppress. See United States v. Cardwell, 433 F.3d 378, 388 (4th Cir.2005). Normally, we would review the district court’s factual findings in the suppression context for clear error. See id. Here, however, the court made no findings of fact. “It is, of course, the better practice for the district court to make such findings, but where the district court fails to do so, we assume the district court construed the evidence in the light most favorable to the party who prevails on the suppression motion below,” id., in this case, the government.
The Fourth Amendment protects “against unreasonable searches and seizures.” U.S. Const, amend. IV. A government agent’s search is unreasonable when it infringes on “an expectation of privacy that society is prepared to consider reasonable.” United States v. Jacobsen, 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984). “In order to demonstrate a legitimate expectation of privacy, [Castel-lanos] must have a subjective expectation of privacy,” United States v. Bynum, 604 F.3d 161, 164 (4th Cir.2010), and that subjective expectation of privacy must be “objectively reasonable; in other words, it must be an expectation that society is willing to recognize as reasonable,” United States v. Bullard, 645 F.3d 237, 242 (4th Cir.2011) (internal quotation marks omitted). The burden of showing a legitimate expectation of privacy in the area searched rests with the defendant. Rawlings v. Kentucky, 448 U.S. 98, 104, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).
The government argues that Castellanos lacked any expectation of privacy in the Explorer because the record failed to establish that he actually owned the vehicle or established any legitimate possessory interest in it. In the absence of such evidence, the government argues, Castellanos is essentially seeking the protection of the Fourth Amendment vicariously and such a status is inadequate upon which to raise a Fourth Amendment claim.[3]
“The Fourth Amendment protects people, not places.” Katz v. United *833 States, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Accordingly, Fourth Amendment rights “may not be vicariously asserted.” United States v. Rumley, 588 F.3d 202, 206, n. 2 (4th Cir.2009) (quoting Rakas v. Illinois, 439 U.S. 128 133-34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). “A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person’s premises or property has not had any of his Fourth Amendment rights infringed.” Rakas, 439 U.S. at 134, 99 S.Ct. 421 (citing Alderman v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969)). Conversely, “suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search- itself, not by those who are aggrieved • solely by the introduction of damaging evidence.” Alderman, 394 U.S. at 171-72, 89 S.Ct. 961. The “capacity to- claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection ... has a legitimate expectation of privacy in the invaded place.” Rakas, 439 U.S. at 143, 99 S.Ct. 421.
For the reasons explained herein, we agree with the government and hold that Castellanos has failed to demonstrate by á preponderance of the evidence that, at the time of the search, the evidence showed that he had a legitimate expectation of privacy in the Explorer.[4]
When attempting to determine whether a defendant has a reasonable ex *834 pectation of privacy in property that is held by another, we consider such factors as “whether that person claims an ownership or possessory interest in the property, and whether he has established a right or taken precautions to exclude others from the property.” United States v. Rusher; 966 F.2d 868, 875 (4th Cir.1992). Here, Castellanos asserted to Roberts that he was purchasing the Explorer, but his claim is not substantiated in any way by the record. Castellanos did not enter the title of the Explorer into evidence, nor did he establish that he purchased the vehicle with a bill of sale, Division of Motor Vehicles registration, or anything else. And there is no evidence that, if he purchased the Explorer at all, he did so prior to the search.
Parties other than owners may possess a reasonable expectation of privacy in the contents of a vehicle. See, e.g., United States v. Jones, 565 U.S. -, 132 S.Ct. 945, 949 n. 2, 181 L.Ed.2d 911 (2012) (observing that although the defendant was not the registered owner of the searched vehicle, he was the “exclusive driver” and the Court thus “[did] not consider the Fourth Amendment significance of Jones’s status”). However, Castellanos offered no evidence that he had any such interest, though he bore the burden of proof. For example, Castellanos presented no evidence that Castenada (or anyone else) had granted him permission to use the vehicle or act as his agent with DAS, or any other right of any kind to the vehicle. This is not a case, like Jones, where the defendant has established an ownership, or even a possessory interest in the vehicle. Cf id. (describing Jones’ rights as similar to those ' of a bailee). Accordingly, this is not the type of case where a defendant has established such a close connection to the vehicle that is subject to search that he may claim a posses-sory interest in it.
Furthermore, although “[individuals may assert a reasonable expectation of privacy in packages addressed to them under fictitious names,” United States v. Villarreal, 963 F.2d 770, 774 (5th Cir.1992), we note that Castellanos adduced no evidence at the suppression hearing demonstrating that the name “Wilmer Castenada” was simply an alias. Instead, Castellanos’ position was that he and Castenada were two separate individuals engaged in a sale transaction as testified .by Roberts. Indeed, Castellanos represented to the trial court that “there is no factual dispute here questioning the facts as rendered by Detective Roberts.” (J.A. 67.) In the absence of evidence that Castenada was Castellanos’ alter ego or a fictitious .name, this case is more closely aligned with United States v. Givens, 733 F.2d 339, 341 (4th Cir.1984) (per curiam), a case in which we held that a defendant lacked a legitimate expectation of privacy in a package that was addressed to a third party.
In sum, the evidence heard by the district court at the suppression hearing failed to support a conclusion that Castel-lanos had anything more than a distantly attenuated connection to the Explorer. Castellanos bore the burden to show that he had a reasonable expectation of privacy, and he has not done so.[5] Having failed to *835 carry his burden, Castellanos cannot challenge the warrantless search of the Explorer.
Finally, our good colleague in dissent makes a few points that we feel warrant a response. First, the dissent contends we “focus [our] attention on how the facts appeared to Captain Roberts at the time of thé search,” post at 847, thus misapplying the proper standard for determining whether Castellanos had a subjective expectation of privacy that is objectively reasonable. To the contrary, our analysis focuses on the facts in the record, rather than the facts as they may have appeared to Captain Roberts. The evidence in the record, of course, is based in large part on Roberts’ testimony, which was not supplemented or controverted by any proffer from Castellanos. The Explorer’s title, highly relevant to the question 'of whether Castellanos owned or had a sufficiently close connection to the Explorer, was never entered into evidence. Nor was there any evidence, other than his claim that, at some point he purchased the vehicle from Castenada, that Castellanos had an interest in the Explorer at the time it was searched.
In addition, the dissent argues that certain facts, known to the government and presented to the district court, establish that Wilmer Castenada was in fact merely an alias of Castellanos. Specifically, the dissent posits that although the address listed on the bill of lading was not associated with Castellanos personally, it was near a towing company where the Explorer may have been destined (Roberts’ testimony was equivocal on that point), and that someone, who may have been Castellanos, had inquired within about the whereabouts of the Explorer.
We first observe that the theory upon which the dissent bases its conclusion appears for the first time in the dissenting opinion. Castellanos’ opening brief on appeal is bereft of any analysis of the standing question, and despite the government’s argument on brief that he lacked standing, Castellanos filed no brief in reply.[6] We therefore question the extent to which Castellanos can be the beneficiary of an argument he has never made.
Even granting Castellanos the benefit of the doubt, and assuming that the Explorer was in fact destined for the Montlieu Avenue towing company in Greensboro, and that Castellanos did in fact inquire therein about the Explorer’s whereabouts, Castel-lanos is no closer to establishing that he has a sufficient connection to the Explorer to establish standing. Instead, the evidence shows at best that Castellanos asked about the Explorer at the place where it was to be delivered. It does not establish either that Castellanos was Castenada, or that, contrary to the bill of lading, Castel-lanos was the intended recipient. In sum, nothing in the dissent alters our conclusion that Castellanos’ interest in the Explorer is too attenuated to demonstrate that any expectation of privacy he may have had in the Explorer’s gas tank was reasonable.
III.
For all of the foregoing reasons, the judgment of the district court is affirmed.

AFFIRMED

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. Castellanos does not challenge the district court's denial of his motion to suppress the contents of the duffle bags. Accordingly, any challenge to that ruling is waived. See United States v. Hudson, 673 F.3d 263, 268 (4th Cir.2012) (issues not raised in opening brief are waived).

. We note at the outset that the concept of "standing” as it is used in the Fourth Amendment context is largely subsumed by substantive Fourth Amendment law, which views the concept through the lens of a reasonable expectation of privacy. Put another way, the Supreme Court has moved away from an independent doctrine of “Fourth Amendment standing.” In Rakas v. Illinois, 439 U.S. 128, *833 139, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), the Court observed that "the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than on any theoretically separate, but invariably intertwined concept of, standing.” The relevant inquiry) thus focused, is ‘
whether the challenged search or seizure violated the Fourth Amendment rights of a criminal defendant who seeks to exclude the evidence obtained during it. That inquiry in turn requires a determination of whether the disputed search and seizure has infringed an interest of the defendant which the Fourth Amendment was designed to protect.
Id. at 140, 99 S.Ct. 421. While in contexts outside those of the Fourth Amendment, the term “standing” might be used to describe the government’s argument that Castellanos cannot successfully challenge the search of the Explorer, we recognize that we are ultimately asking whether Castellanos “personally has an expectation of privacy in the place searched, and [whether] his expectation is reasonable.” Minnesota v. Carter, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) (emphasis added). Accordingly, -we analyze "standing” in the context of whether Castella-nos had a reasonable expectation of privacy ' within the gas tank of the Explorer under the facts of this case.

. The dissent repeatedly faults the government and the district court for failing to call Castellanos at the suppression hearing to prove his standing (i.e., his reasonable expectation of privacy) in order to raise the objection to the search’of the Explorer. See post, at 835-36, 845 n. 16. But the dissent agrees with the undisputed proposition that proving standing was Castellanos’ burden to bear. See post at 845-46 (citing United States v. Stevenson, 396 F.3d 538, 547 (4th Cir.2005)). Castellanos made no effort to prove his standing or rebut the government’s argument that he had none. He was represented by able counsel, and it is not the duty of the court or the government to make Castellanos’ reasonable expectation of privacy case for him. In- ’ -deed, as the dissent itself observes, the government’s primary argument in opposition to the motion to suppress was that Castellanos lacked standing to challenge the search of the Explorer. See post at 836. Castellanos, through counsel, was on notice that his standing was disputed, and neither the government, nor the district court, was obligated to remind him of his burden. Moreover, the argument made by the dissent appears sua sponte for the first in the dissent, having never been presented by Castellanos in the trial court or on appeal.

. Because we conclude that Castellanos lacked a reasonable expectation of privacy in any part of the Explorer, we need not address any aspect of the search of the gas tank. Accordingly, we disagree with the dissent's assertion that we fashion a new rule of law that delivering personal effects to a common carrier undermines an otherwise objectively reasonable expectation of privacy in those effects. See post at 837 n. 3. Castellanos does not lack standing because the Explorer was being transported by common carrier. He lacks standing because he failed to carry his burden to show that he had a constitutionally *835 sufficient connection to the Explorer to demonstrate an objectively reasonable expectation of privacy.

. Indeed, although the dissent relies heavily on facts taken from the government’s response to Castellanos1 motion to suppress, the "Statement of Facts” contained in Castella-nos’ opening brief on appeal consists almost entirely of facts gleaned from Robert’s testimony.