**UNITED STATES of America,
Appellant,**

**v.**

**Marquis AIKEN, Defendant, Appellee.**

No. 17-1036

United States Court of Appeals,
First Circuit.

December 18, 2017

Benjamin M. Block, Assistant United States Attorney, with whom Richard W. Murphy, Acting United States Attorney, Margaret D. McGaughey, Assistant United States Attorney were on brief, for appellant.

Vivian Shevitz, South Salem, NY, for appellee.

Before LYNCH, STAHL and THOMPSON, Circuit Judges.

STAHL, Circuit Judge.

In this criminal appeal, we must decide whether the Defendant, Marquis Aiken ("Aiken"), had a reasonable expectation of privacy under the Fourth Amendment in the motel room where he was at the time of a police search of the premises. The district court ruled in Aiken's favor. The government timely filed this appeal. After careful review, we reverse and remand.

## I. FACTUAL BACKGROUND

On November 7, 2014, two state troopers and members of the Maine Drug Enforcement Agency ("MDEA") received a tip that individuals who were in room 216 at the Super 8 Motel in Lewiston, Maine had with them large bags containing crack, cocaine or heroin. The Super 8 Motel was known to the agents as a common stopover for out-of-state gun and drug traffickers.

At approximately 9:00 AM, MDEA agents began knocking on the door to room 216. Although no one from room 216 responded to their repeated knocks, an unidentified man partially opened the door to room 218. Although room 218 smelled of marijuana, the agents informed the man that they were not there for him.[1]

After a minute or two, the door to room 218 opened again. A man subsequently identified as Joshua Bonnett ("Bonnett") stood by the door and Aiken stood five to ten feet behind him. Aiken was barefoot and only wearing shorts. The agents noticed "one particular bed look[ed] like the sheets and the comforters were pulled back and the other one liked [sic] like it had just been made." One of the agents recognized Aiken from a relatively recent heroin trafficking arrest.[2] Aiken's presence raised suspicions that "there was possibly more going on inside that room besides marijuana."

The agents asked both men to step out of the room. When neither man exited the room, the agents entered, conducted a security sweep and observed what appeared to be a bag containing marijuana on one of the beds and a digital scale dusted with white powder on a nightstand between the two beds. One of the agents opened the top drawer of the nightstand and discovered a bag containing one-quarter to one-half kilogram of a substance that appeared to contain cocaine base.

The agents subsequently obtained a search warrant, and as a result of the evidence seized in the search, the government charged Aiken and Bonnett with possession with intent to distribute a mixture

---

1. The agent "believed somebody was actively smoking in the room."

2. That arrest occurred in April 2014 for possession or trafficking heroin, however, the case was later dismissed.

or substance containing cocaine base, in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting such conduct, in violation of 18 U.S.C. § 2.

Both Aiken and Bonnett filed motions to suppress all evidence seized as a result of the search. Originally, the magistrate judge heard the evidence and determined that neither Bonnett nor Aiken could challenge the search of the motel room. On de novo review, without hearing any new evidence, the district court reversed the magistrate's decision. The district court found that both Defendants had a reasonable expectation of privacy in the motel room and could contest the search as a violation of their Fourth Amendment rights.

The district court determined that Jahrael Browne ("Browne") had rented room 218 at the Super 8 Motel with another person, Bonnett, and that Aiken stayed in the room with Bonnett. The district court explained that "Bonnet was Browne's traveling companion from Massachusetts to Maine" and Browne rented the room accompanied by another person who appeared from a video to be Bonnett. The motel registration reflected two persons staying in the room; however, only Browne's name was included on the registration form. In addition to Bonnett and Browne traveling together, Browne's license was found in the motel room, "further suggesting a connection between Browne and Bonnett." Bonnett was also in possession of the room key at the time the agents entered the room. At 9:00 AM, the appearance of the room and the occupants "were consistent with two occupants—Bonnett and Aiken—having slept in the room and, therefore, having occupied the room for more than a brief period." Post-arrest statements made by Aiken to his mother "confirm that the room was Bonnett's room and that Aiken stayed there with Bonnett's knowledge."

Finding that both Bonnett and Aiken could challenge the search, the court ruled that the search violated the Fourth Amendment and granted Aiken and Bonnett's motions to suppress. The government appealed the district court's decision as to Aiken's expectation of privacy.

## II. STANDARD OF REVIEW

We review the district court's findings of fact for clear error and its conclusions of law de novo. See United States v. Carty, 993 F.2d 1005, 1008 (1st Cir. 1993).

The Fourth Amendment provides "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "To prevail on a claim that a search or seizure violated the Fourth Amendment, a defendant must show as a threshold matter that he had a legitimate expectation of privacy in the place or item searched." United States v. Battle, 637 F.3d 44, 48 (1st Cir. 2011) (emphasis added) (citing Minnesota v. Olson, 495 U.S. 91, 95, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990)). "The burden of proving a reasonable expectation of privacy lies with the defendant." United States v. Mancini, 8 F.3d 104, 107 (1st Cir. 1993). "In order to make such a demonstration, the defendant must show both a subjective expectation of privacy and that society accepts that expectation as objectively reasonable." Id.

## III. DISCUSSION

In determining that Aiken had a reasonable expectation of privacy in the motel room, the district court first determined that Bonnett was a guest in the room with Browne. From there, the court inferred that Aiken was an invited guest of Bonnett. On appeal, the government argues that the district court erroneously found

that Aiken was a guest of Bonnett and further contends that Aiken did not demonstrate that he had a reasonable expectation of privacy in the room. We address the two issues in turn.

## A. Aiken's Guest Status

To the extent the district court found that Aiken was a guest because Bonnet invited Aiken into the room, the district court did not clearly err. Aiken was in the motel room along with Bonnett when the agents conducted the search. Based on the appearance of the two beds in the motel room and Aiken's state of undress at 9:00 AM, the district court concluded that Aiken "slept in the room" for "more than a brief period." It was not improper for the court to draw the inference that Bonnett had invited Aiken into the room.

We pause here to emphasize that we use the term guest in accordance with the district court's finding, made entirely by inferences, without direct evidence showing that Bonnett invited Aiken into the motel room. In fact, Bonnett's affidavit, which he provided to the court in support of his motion to suppress, did not even mention Aiken. It would be inappropriate for this Court to make any other inferences to support Aiken's reasonable expectation of privacy, in light of the fact that he came forward with no evidence on a motion that he had the burden to carry. As such, the term guest, at least in this case, does not carry with it any Fourth Amend-

ment protection unless and until the defendant has satisfied his burden of proving a reasonable expectation of privacy. See Mancini, 8 F.3d at 107.

■ An invitation to be present in a location does not automatically confer Fourth Amendment privacy protection. See Rakas v. Illinois, 439 U.S. 128, 148, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978) ("[T]he fact that they were legitimately on [the] premises ... is not determinative of whether they had a legitimate expectation of privacy.") (alteration in original) (internal citations omitted); see also United States v. Irizarry, 673 F.2d 554, 556 (1st Cir. 1982) ("The hotel room here was registered to [Defendant 1 but Defendant 2], however, offered no evidence of any personal interest in the room beyond his being 'merely present.' ").[3] Aiken's guest of a guest status does not resolve the question of whether he had a reasonable expectation of privacy in the room. Therefore, we turn to the government's second argument.

## B. Aiken's Reasonable Expectation of Privacy

■ In finding that Aiken had a reasonable expectation of privacy, such that he could challenge the search of the motel room, the district court found that Aiken was a guest who spent more than a brief period of time in the room. On appeal, however, the government challenges whether Aiken met his burden. Although

---

**3.** Other circuits have analyzed a defendant's reasonable expectation of privacy by focusing on the hotel guest's designation. For instance, in the Tenth Circuit, an unregistered visitor was found to lack a subjective expectation of privacy in a motel room because he was aware of the motel's policy that forbade persons other than registered guests from using the motel rooms. United States v. Conway, 73 F.3d 975, 979 (10th Cir. 1995); see also United States v. Carr, 939 F.2d 1442, 1444–46 (10th Cir. 1991) (notwithstanding a three-

week stay, an unregistered resident failed to establish a reasonable expectation of privacy in a motel room in which the registered guest was not present and the unregistered resident presented no evidence connecting him to the room or the registered guest); but see United States v. Williams, 521 F.3d 902, 906 (8th Cir. 2008) (assuming in dicta an unregistered guest had a reasonable expectation of privacy in a motel room after a registered guest rented two rooms and informed the motel manager that "my friend is going to come in").

the district court did not clearly err in finding that Aiken was Bonnett's "guest"—that is, Aiken was invited by Bonnett to sleep in the motel room for "more than a brief period," it incorrectly inferred that Aiken had an objectively reasonable expectation of privacy based on these facts alone.

As previously mentioned, the burden is on the defendant to show that he had a reasonable expectation of privacy in the area searched. Mancini, 8 F.3d at 107. Here, rather than testify or put on any evidence, Aiken relied on the government's evidence to satisfy his burden. On appeal, Aiken argues that as a guest who slept in the room, he "had an actual, subjective expectation of privacy ... that was objectively reasonable." This, argues Aiken, is enough to meet his burden. We do not agree.

In Minnesota v. Carter, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998), the Supreme Court considered whether an individual who was legitimately on the premises for the purpose of bagging cocaine had an expectation of privacy in an apartment. Despite the permission and presence of the apartment's occupant, the Court found that "the purely commercial nature of the transaction ... the relatively short time on the premises, and the lack of any previous connection between respondents and the householder," resulted in a lack of Fourth Amendment protection. Id. at 91, 119 S.Ct. 469. Therefore, it is appropriate for us to consider the (1) the nature of the defendant's visit, (2) his length of stay, and (3) his relationship to the host in analyzing a defendant's reasonable expectation of privacy.

As in Carter, the evidence before the district court supports that Aiken was in the room for business purposes, specifically drug trafficking. One of the agents who executed the search testified that Aiken's presence in the room made him wary that the men were engaged in drug trafficking. A scale was on display and looked as if it had been recently used and the motel was known to the agents as a location commonly used by drug traffickers. Aiken provided no evidence to support that his visit was for non-business purposes.

As to Aiken's length of stay, the district court found that Aiken slept in the room and was present for "more than a brief period," however, the district court made no factual findings as to the amount of time Aiken spent in the room. All that the evidence showed was that Aiken was present in the room for less time than Bonnett because the video evidence depicted only two men checking into the motel and the district court concluded one of those men was Browne, to whom the room was registered, and the other was likely Bonnett. On the other hand, Aiken provided no evidence as to when he arrived at the motel or the room.

Additionally, Aiken put forth no evidence regarding how he knew the two men actually associated with the motel room. The agents testified that when they found the drugs in the drawer, Bonnett made a comment to Aiken, "We should have put it where we usually do." While this statement indicates that Aiken and Bonnett may have known each other before this encounter, it also shows that whatever the relationship was, it was likely for the business purpose of trafficking drugs. Further, there is no indication that Aiken had a relationship with Browne, the legal renter of the motel room, or even that he had stayed there with Browne's permission. Aiken could have easily supplied this evidence, but he did not.

We acknowledge that this case is not easily resolved by the rules set forth in Carter because the district court made a finding that Aiken slept in the motel room

for longer than a brief period of time, in contrast to Carter, where the Court explained that defendants were only present for approximately two-and-a-half hours. See also United States v. Larios, 593 F.3d 82, 93 (1st Cir. 2010) (no reasonable expectation of privacy for "fleeting" visitor to motel room); United States v. Rodriguez–Lozada, 558 F.3d 29, 37 (1st Cir. 2009) (no reasonable expectation of privacy for a "casual visitor for a brief period"). Further, the government, ironically, put forth evidence in which Aiken told his mother that he "spent the night" in the motel room, further distinguishing the case from Carter.

While we recognize the factual differences between this case and Carter, the dissent completely ignores the precedent set out by the Supreme Court in Carter, and instead relies squarely on Olson. But, therein lies the problem. While the district court found that Aiken slept in the room, there was no finding that he was an "overnight guest" within the meaning of Minnesota v. Olson. There is a qualitative difference between an overnight guest and drug trafficker who is present inside a motel room and falls asleep for an unknown period of time. Further, the dissent suggests that the inference of Aiken's overnight guest status should be drawn in Defendant's favor; however, the Court can only make such inferences if they are reasonable. See United States v. Owens, 167 F.3d 739, 743 (1st Cir. 1999).[4] In light of all of the inferences the district court already made in Aiken's favor, it is not reasonable for this Court to assume that sleeping in a hotel room, for more than a brief period of time, means that Aiken was an overnight guest as envisioned by the Supreme Court in Olson. Had the Supreme Court meant to encompass all guests under the Olson analysis, it would have said so, but as the dissent itself notes, the overnight guest relationship envisioned by Olson is imbued with an expectation of privacy because it is a "longstanding social custom that serves functions recognized as valuable by society." 495 U.S. at 96, 110 S.Ct. 1684 (emphasis added). And the examples of overnight guests provided in Olson include "houseguests," and visiting "parents, children, and distant relatives." Id. at 97, 110

4. The dissent states that the "undisputed record evidence shows that Aiken stayed in the room overnight." This is an unreasonable inference. The dissent relies on several cases which discuss "reasonable inference drawing." See e.g., United States v. McGregor, 650 F.3d 813, 823–24 (1st Cir. 2011); United States v. Owens, 167 F.3d 739, 743 (1st Cir. 1999). In certain circumstances, perhaps when the Defendant attempts to satisfy his burden or put on evidence to support his claim, inference making of the type envisioned by the dissent may be reasonable. Here however, Aiken provided no evidence to satisfy his burden, and the district court made no factual findings which demonstrate that Aiken spent the night in the room, therefore, it is impossible for this Court to reasonably infer that Aiken was an overnight guest with an expectation of privacy.

The dissent also argues that Aiken could satisfy his burden solely by relying on the Government's evidence—specifically, the transcript of Aiken's call to his mother. We need not address the merits of this contention because notwithstanding the phone call, Aiken still fails to satisfy his burden. Simply put, the district court made six factual findings, all of which were made from inferences, and these findings, taken as a whole, are insufficient to show that Aiken had an objectively reasonable expectation of privacy in the motel room. The district court merely found that Aiken had slept in the room for "more than a brief period" at Bonnett's invitation. That is not a finding that he was an overnight guest within the meaning of Minnesota v. Olson, nor is it even a finding that he had spent the whole night in the room. And as explained above, any "inference" to the contrary is unreasonable.

S.Ct. 1684. Aiken does not fall into this category.

If there remains any doubt as to Aiken's reasonable expectation of privacy in the motel room, we analyze further to emphasize that Aiken failed to meet his burden.[5]

Aiken was not registered as a guest in the hotel room and he did not have any possessions in the room besides the sneakers he was trying to put on when the agents arrived and his t-shirt. There were no indicia present in the hotel room supporting Aiken's overnight-guest status, such as an overnight bag or toiletries. Although Aiken's bus ticket was found in the motel room, the presence of a ticket and the few articles of clothing being worn by

Aiken fail to show any expectation of privacy. Further, while Bonnett had a key to the room on his person, Aiken did not have a key to the motel room. If he had exited, he would have been unable to return, unless Bonnett allowed him to do so. Aiken may have been able to open and close the door, but it is unclear if he could do this without Bonnett's permission.[6] See United States v. Gomez, 770 F.2d 251, 254 (1st Cir. 1985) ("Thus, there was no evidence that appellant had possession or control of the premises. Nor did [he] provide evidence of his ability to exclude others from use of the property."). It was Aiken's burden to demonstrate otherwise.[7]

While Aiken provided no evidence as to his expectation of privacy, the government

---

5. In addition to the factors we consider below, we note that other circuits undergo similar analyses in the context of Fourth Amendment protection. See United States v. Williams, 521 F.3d 902, 906 (8th Cir. 2008) (finding no legitimate expectation of privacy where the record failed to indicate the length of time the defendant had spent in the hotel room, whether he had a key, and whether he had personal belongings there).

6. While the two agents' testimony conflicted as to who opened the door to room 218, the district court stated: "Pappas saw defendant Joshua Bonnett standing in the doorway ... [s]tanding behind Bonnett inside the room was ... Aiken."

7. In support of its argument, the dissent relies on this Circuit's recent decision in United States v. Bain, 874 F.3d 1 (1st Cir. 2017), where the Court found that a Defendant, who was an overnight guest at his girlfriend's apartment, had a "sufficient connection with [the apartment] to mount an unfettered challenge to the search of that unit." Id. at 11.

Bain is patently distinguishable on both legal and factual grounds. First, Bain presents an entirely separate legal issue from this case: whether an overnight guest in a home has a property-based Fourth Amendment right to challenge the police's use of a key to open his host's front door. Aiken is not claiming here that the police trespassed upon his curtilage. Rather, at issue are his privacy interests inside the motel room, and whether he provided

sufficient evidence to make a threshold showing that he had reasonable expectation of privacy. Bain thus has no bearing on our holding.

Furthermore, Bain is factually distinguishable from this case because Bain met his burden in showing that he had a reasonable expectation of privacy as an overnight guest. Bain offered evidence of his social relationship to the host and purpose of his visit, beyond drug activity. Several forms of identification belonging to Bain were found in the apartment, including an auto insurance card, a MassHealth card and a AAA card. Id. at 25. Bain's girlfriend rented the apartment and Bain appeared to keep personal belongings in the unit, including several boxes of sneakers and a parking ticket in his name. Id. Agents also observed Bain's car outside the apartment complex on several occasions. Id. at 9. Here, Aiken's lack of evidence is fatal to his case.

The Court's statement in Bain, "[u]nder Supreme Court precedent, Bain's status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable," does not vitiate the requirement that the defendant bears the burden of establishing he is an overnight guest as contemplated by Minnesota v. Olson. Aiken bears the burden of establishing a reasonable expectation of privacy in the hotel room, and Aiken failed to establish that he was an overnight guest within the meaning of Olson. Therefore, Bain has no bearing on our holding.

presented evidence showing Aiken distancing himself from the room, explaining to his mother that the room was not his and he was just visiting.[8] See United States v. Zapata, 18 F.3d 971, 978 (1st Cir. 1994) ("[O]ne who disclaims ownership is likely to be found to have abandoned ownership.").

Because we find that Aiken failed to demonstrate an objectively reasonable expectation of privacy, we do not need to analyze Aiken's subjective expectations.

We cannot find that Aiken had a reasonable expectation of privacy in the motel room. It remains unclear what purpose Aiken had in room 218, how long he stayed in the room, how long he slept in the room and how well he knew the occupant. While certain inferences can be drawn from the testimony provided, these inferences alone cannot satisfy Defendant's burden. We find that sleeping in a motel room for longer than a brief period of time, without more, is insufficient to warrant Fourth Amendment protection.

## IV. CONCLUSION

Aiken, at best a guest of a guest in room 218 at the Super 8 Motel, did not have a reasonable expectation of privacy in the motel room. For all the reasons described above, we reverse the decision of the district court and remand for further proceedings.

THOMPSON, Circuit Judge, dissenting.

Some say the Fourth Amendment—a provision that protects precious freedoms—is dying "a death by a thousand cuts." See United States v. Griffin, 589 F.3d 148, 154 (4th Cir. 2009) (Gregory, J.,

dissenting). They might be right. Just consider what happened here.

All agree that given how intensely personal Fourth Amendment rights are, see Rakas v. Illinois, 439 U.S. 128, 133, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), Aiken must prove that the contested search violated his legitimate expectation of privacy, under a test with two components—one subjective, the other objective, see United States v. Rheault, 561 F.3d 55, 59 (1st Cir. 2009). The subjective component requires that he show that he had an actual expectation of privacy in the searched area. See Rheault, 561 F.3d at 59. The objective component requires that he show that this expectation is one society is ready to accept as reasonable. See id. Aiken must carry this burden by a preponderance of the evidence, see United States v. Matlock, 415 U.S. 164, 177 n.14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974)—which is a more-likely-than-not standard, see United States v. Correa-Osorio, 784 F.3d 11, 24 (1st Cir. 2015). Accepting the judge's factual findings absent clear error but inspecting his legal conclusion de novo, we must scan the entire record in the light most flattering to his ruling, see United States v. Turner, 169 F.3d 84, 85 n.1 (1st Cir. 1999), "drawing all"—repeat, all—"reasonable inferences in the ruling's favor," see United States v. McGregor, 650 F.3d 813, 823-24 (1st Cir. 2011) (citing United States v. Owens, 167 F.3d 739, 743 (1st Cir. 1999)). And ultimately, we must affirm if any sensible view of the record backs that ruling up. See United States v. Materas, 483 F.3d 27, 32 (1st Cir. 2007).

Aiken introduced no evidence at the suppression hearing. He just cross-examined the government's witnesses. And when all was said and done, the judge—after view-

---

8. The government provided recorded calls made by Aiken to his mother from the Bureau of Prisons. In one of the calls, Aiken stated: "Mom … [t]hat's what I kept telling you … I did not have a room."

ing the suppression-hearing record through the proper legal lens—made several critical findings:

1. Bonnett "rented" the room with Browne the day before the search went down.

2. So "the room was Bonnett's room" too.

3. And "Aiken stayed there with Bonnett's knowledge."

4. More, "Aiken was in the room" not just with Bonnett's "knowledge," but "with Bonnett's permission."

5. The search "occurred around 9:00 a.m."

6. Bonnett had "possession" of the room "and had a key to the room" when law enforcement "encountered him and Aiken at the motel."

7. "The morning hour," the "appearance of the room," and the "appearance of its . . . two occupants—Bonnett and Aiken—" jibe with their "having slept in the room and, therefore, having occupied the room for more than a brief period."

And make no mistake—the veteran judge did not pull these findings out of thin air. Among the supporting evidence in the record is:

1. Bonnett's calling the room (in an affidavit) "our room"—meaning his and Browne's room.

2. An agent's saying the room had two beds, one of which "look[ed] like the sheets and the comforters were pulled back" and the other of which looked "like it had just been made."

3. The agent's saying Aiken had on shorts and maybe a t-shirt, but no shoes, while Bonnett had on "mesh shorts and a t-shirt"—for what it's worth, a quick check of publicly available records shows the outside temperature in the Lewiston area hovered around 43 degrees Fahrenheit at the time of the search,[9] a fact we can take judicial notice of. See Sharfarz v. Goguen (In re Goguen), 691 F.3d 62, 71 n.6 (1st Cir. 2012).

4. And Aiken's telling his mother during a recorded jailhouse call that

   a. he had "spent the night" in Bonnett's room, with Bonnett's blessing;

   b. he "was asleep" when the agents showed up; and

   c. he "went back in the bed" after he first heard the agents' knocking.

   By the way, the prosecutor presented this evidence after agreeing with Bonnett's lawyer that the transcripts—which confirm Bonnett had "registered" as a motel guest—were relevant to the reasonable-expectation-of-privacy question.

Anyhow, after making his findings, the judge ruled that "Aiken had an actual, subjective expectation of privacy" in the searched room "that was objectively reasonable." Which triggered this appeal by the government.[10]

Critically, the majority rules none of the judge's findings clearly erroneous. Rightly so, since "[t]he clear-error hurdle is, of course, quite high"—under that standard, we can't flip the judge's "findings of fact or

---

9. See Local Climatological Data Station Details, NOAA (last visited Nov. 14, 2017), www.ncdc.noaa.gov/cdo-web/datasets/LCD/stations/WBAN:94709/detail (select "2014" for year; select "November" for month; select "7" for day; then click "View Data").

10. The government also appealed the judge's ruling that Bonnett's privacy expectation met the subjective and objective criteria discussed above. But the government later asked us to dismiss that appeal, see Fed. R. App. P. 42(b), and we obliged.

conclusions drawn therefrom unless, *on the whole of the record*, [we] form a strong, unyielding belief that a mistake has been made." Lenn v. Portland Sch. Comm., 998 F.2d 1083, 1087 (1st Cir. 1993) (emphasis added) (quoting Cumpiano v. Banco Santander P.R., 902 F.2d 148, 152 (1st Cir. 1990)).[11] And no judge on this panel sees anything approaching that standard here.

Yet curiously, despite letting the judge's findings stand, the majority says Aiken was not an "overnight guest," but merely a "drug trafficker who [was] present inside [the] motel room and [fell] asleep for an unknown period of time." Having deemed his "guest status" inadequate to "resolve the question of whether he had a reasonable expectation of privacy," the majority then shifts focus to "(1) the nature of [Aiken's] visit" to the motel, "(2) his length of stay, and (3) his relationship to" Bonnett and Browne. And after blasting him for coming "forward with no evidence on a motion that he had the burden to carry," the majority says an analysis of those three factors shows he has no "objectively reasonable expectation of privacy." Then the majority basically ends it all with these words: "sleeping in a motel room for longer than a brief period of time, without more, is insufficient to warrant Fourth Amendment protection."

But the majority makes an error right out of the gate, an error that infects its entire analysis. I say this because the judge's *unreversed* findings—coupled with the *uncontested* record evidence—actually point to Aiken's being an *overnight guest*. Think about it: Co-room-renter Bonnett let Aiken stay in the room, a room that was just as much Bonnett's as it was Browne's. That is a game-changing finding, since no one—not even the government—disputes that co-room-renter Browne had the authority to have guests stay over. And not only was Aiken in the room on Bonnett's say-so, but Aiken "slept" there, and "for more than a brief period"—yet another game-changing finding, especially since the undisputed evidence (which the *government itself* introduced) shows Aiken "spent the night there."

The majority tries earnestly—and in seven ways—to argue against the overnight-guest designation. But none persuades me.

First, the majority criticizes Aiken for using "the government's evidence to satisfy his burden" on the reasonable-expectation-of-privacy front, instead of "testify[ing] or put[ting] on any evidence" himself. But I know of no authority—and the majority cites none—suggesting that Aiken couldn't lean on the government's evidence in shouldering his burden. That's hardly a surprise, since solid precedent points in precisely the opposite direction—the Federal Reporter is full of cases declaring that we must "consider[ ] *all* the evidence" in deciding whether "[r]eversal is appropriate." See, e.g., United States v. Martinez, 762 F.3d 127, 130 (1st Cir. 2014) (emphasis added).[12] If

---

**11.** See also Toye v. O'Donnell (In re O'Donnell), 728 F.3d 41, 46 (1st Cir. 2013) (noting that clear error means the judge got things "wrong with the force of a 5 week old, unrefrigerated, dead fish" (quoting S Indus., Inc. v. Centra 2000, Inc., 249 F.3d 625, 627 (7th Cir. 2001))).

**12.** See generally United States v. Castellanos, 716 F.3d 828, 846 (4th Cir. 2013) (emphasizing that a "defendant need not affirmatively present evidence of his legitimate expectation of privacy; rather, he may simply 'point to specific evidence in the record which the government [has] presented'" (quoting United States v. Zermeno, 66 F.3d 1058, 1062 (9th Cir. 1995) (alteration in original))); see also 6 Wayne R. LaFave, Search and Seizure: A Treatise on the Fourth Amendment § 11.2(b) (5th ed. Oct. 2017) (noting that "it may happen that the [defendant's] burden is actually

more were needed—and I doubt that it is—even the prosecutor conceded below that the judge could consider the government-proffered jailhouse-call evidence in deciding whether Aiken had Fourth Amendment rights in the room. So argument-number one has no oomph, as I see it.

Second, the majority says (emphasis mine) that while the judge rightly inferred from the evidence that Bonnett had invited Aiken into the room, we cannot "make *any other* inferences to support Aiken's reasonable expectation of privacy" because he offered "no evidence" on an issue on which he bears the burden of proof. That statement strikes me as odd, and for a simple reason: argument-number one implies that witness and affidavit testimony offered by others can't help Aiken, yet argument-number two concedes—in a way that seemingly contradicts argument-number one—that the judge correctly drew the Bonnett-invited-Aiken inference from witness and affidavit testimony offered by others. Anyhow, the subtext of the majority's argument is the suggestion that the law puts some kind of cap on the number of inferences that judges can draw from the evidence. No dice, I'm afraid: the majority doesn't identify—and I've not found—a single case supporting that proposition, probably because precedent commands us to "draw[ ] *all* reasonable inferences" in support of the judge's ruling. See McGregor, 650 F.3d at 823–24 (double emphasis added). Which, by my reckoning, takes all the wind out the majority's can't-make-additional-inferences argument.

Third, the majority elsewhere contends that "the amount of time [Aiken] spent in the room" is "unknown" and—echoing a

familiar theme—asserts that because he failed to "put forth evidence" on that score, "he failed to meet his burden." Not so, I say. As noted above, the government introduced evidence—in the form of an audio disc and transcripts of Aiken's jailhouse calls with his mother—that Aiken had "spent the night" in Bonnett's room. And once again, the majority cites no authority—nor have I found any—indicating that Aiken could not rely on this evidence in meeting his burden. Enough said about argument-number three.

Fourth, the concatenation of circumstances—the time of the search (9:00 a.m.-ish), the room's condition (*e.g.*, one bed unmade, the other just made), and the occupants' appearance (*e.g.*, Aiken had just woken up and was barely dressed)—led the judge to find that Bonnett and Aiken had "slept in the room." The majority tries to score points by playing up how the judge made "no finding that [Aiken] was an 'overnight guest.'" The argument comes to naught, however. Yes, the judge never used the "overnight guest" buzz-phrase. But the judge did find that Aiken had "slept in the room" and thus had "occupied the room for more than a brief period." The majority thinks the "more than a brief period" finding has no significance—maybe the majority thinks there's a magic number of hours one must spend in a room to get tagged as an overnight guest, though the majority doesn't say what that number is (3 hours? 6 hours? 9 hours?). No matter. The undisputed record evidence shows that Aiken stayed in the room *overnight*—as the *guest* of Bonnett, who had rented the room the day before the search with Browne, as the judge supportably found.[13] So in other words, the

met ... by evidence given by the [government]").

13. The majority criticizes Aiken for not producing evidence that he "had a relationship with Browne" or that he had stayed in the room "with Browne's permission." But be-

uncontested evidence and the unreversed findings put Aiken squarely in the overnight-guest camp. And that means argument-number four isn't a difference-maker either, at least in my book.

Fifth, focusing on the "reasonable" part of the "all reasonable inferences" standard discussed in cases like McGregor and Owens, the majority suggests that it's simply "unreasonable" to infer that Aiken stayed in the room "overnight." I couldn't disagree more strongly: given that the only evidence in the record is that Aiken "spent the night" in Bonnett's room, I think it's perfectly reasonable to infer that he stayed there "overnight"—put more bluntly, "spent the night" = "overnight." And to the extent the majority thinks inference-drawing is *verboten* in this context, our caselaw holds otherwise—to quote from one of our many cases: "[w]here specific findings are lacking, we view the record in the light most favorable to the [suppression] ruling, drawing *all* reasonable inferences in support of the challenged ruling." See Owens, 167 F.3d at 743 (emphasis added).

Sixth, in a variation of a just-discredited argument, the majority implies that because Aiken "provided no evidence to satisfy his burden," one can't draw the overnight-guest inference that he wants. The unstated but inescapable premise of the majority's position is that one can't make reasonable inferences from the *government's* evidence. But like the earlier one, this argument—also made without citation to any authority—is a no-go: the caselaw (as I keep repeating) says we must draw *all* reasonable inferences in favor of the judge's ruling after the reviewing the *record as a whole*, see McGregor, 650 F.3d at 823–24, and obviously, the government's evidence is part of the whole record.

Seventh and finally, the majority claims that Aiken can't be an overnight guest for constitutional purposes because his case is too dissimilar to United States v. Bain—a hot-off-the-presses decision where we held that the defendant who had stayed overnight at his girlfriend's apartment could challenge the constitutionality of a search there that turned up (among other things) drugs and tools of the drug trade. See 874 F.3d 1, 10, 13–14 (1st Cir. 2017). Unlike Aiken, the Bain defendant provided "evidence of his social relationship to the host and purpose of his visit." At least that's what the majority thinks. I beg to differ. Again, and at the risk of excessive repetition, the unchallenged evidence here shows Aiken certainly knew Bonnett well enough to stay with him in the room overnight and to catch some Zs in one of the beds—activities that society regards as private and that put him in the overnight-guest category. See Minnesota v. Olson, 495 U.S. 91, 96–100, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (stressing that an overnight lodging provides as much privacy and security on a short-term basis as one's home does on a long-term basis, thus giving the overnight guest a reasonable expectation of privacy). And the majority points to no language in Bain that compels a contrary conclusion.

Given Aiken's overnight-guest status, the rest of the analysis is easy-peasy. Our judicial superiors held decades ago that a person's "status as an overnight guest *is alone enough* to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." Olson, 495 U.S. at 96–97, 110 S.Ct. 1684 (emphasis added). And the Court provided reasons aplenty for the rule:

To hold that an overnight guest has a legitimate expectation of privacy in his

cause—as I've just explained—the room was just as much *Bonnett's* as it was Browne's, the

majority's Browne-centric argument carries no weight.

host's home merely recognizes the everyday expectations of privacy that we all share. Staying overnight in another's home is a longstanding social custom that serves functions recognized as valuable by society. We stay in others' homes when we travel to a strange city for business or pleasure, when we visit our parents, children, or more distant relatives out of town, when we are in between jobs or homes, or when we house-sit for a friend. We will all be hosts and we will all be guests many times in our lives. From either perspective, we think that society recognizes that a houseguest has a legitimate expectation of privacy in his host's home. Id. at 98, 110 S.Ct. 1684. An overnight guest, the Court went on to say,

> seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend.

Id. Of course, it goes without saying (but I say it anyway) that a motel room "can clearly be the object of Fourth Amend-

ment protection as much as a home...." See Hoffa v. United States, 385 U.S. 293, 301, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); see also Stoner v. California, 376 U.S. 483, 490, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).

Relying on Olson, we held in Bain that the defendant's status as an overnight guest at his girlfriend's apartment—*in and of itself*—gave him "a reasonable expectation of privacy in the [premises]." See Bain, 874 F.3d at 13. So he had "a sufficient connection with [the apartment]" to seek suppression of drugs and drug-trade tools found there. Id. at 11. And because Aiken fits within the overnight-guest category, Olson and Bain require us to affirm the judge's order below—of that I am certain.[14]

Perhaps sensing the difficulties in its position, the majority attempts to distinguish Bain, arguing that Bain "present[ed] an entirely separate legal issue from this case: whether an overnight guest in a home has a property-based Fourth Amendment right to challenge the police's use of a key to open his host's front door." "Aiken," the majority continues, "is not claiming here that the police trespassed upon his curtilage"—"[r]ather, at issue here is his privacy interests inside the motel room, and whether he provided sufficient evidence to make a threshold showing that he had a reasonable expectation of privacy."

The problem for the majority is this. Before addressing and rejecting the gov-

---

14. The majority thinks I've ignored Minnesota v. Carter, 525 U.S. 83, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998). My response: Carter held that two defendants did not have a legitimate expectation of privacy in an apartment they had occupied only for *2 ½ hours* and only for the purpose of packaging drugs. Id. at 86, 91, 119 S.Ct. 469. The Carter defendants did not come within the overnight-guest category, obviously. See id. at 91, 119 S.Ct. 469. But Aiken does, for the reasons recorded above.

So the majority's Carter-driven argument can't succeed.

Separately but relatedly, the majority implies that I think "the Supreme Court meant to encompass all guests under the Olson analysis." But I think nothing of the sort. As I've been at pains to stress, Olson holds that an *overnight guest* has a legitimate expectation of privacy in his host's abode—and constitutionally speaking, Aiken has achieved an overnight-guest status.

464

ernment's claim "that a search defined in part by an invasion of property rights is a search only as to persons who could maintain a common law trespass claim," we emphasized how the defendant was an "overnight guest" of his girlfriend. Bain, 874 F.3d at 13. And we emphasized as well how "[u]nder Supreme Court precedent," his overnight-guest status " 'is alone enough to show that he had an expectation of privacy in the [apartment] that society is prepared to recognize as reasonable.' " Id. (quoting Olson, 495 U.S. at 96–97, 110 S.Ct. 1684). Importantly here, the just-quoted Bain statements are holdings—because they were necessary to the result there—and so we're bound to follow them. See generally Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 67, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996) (explaining that "when an opinion issues for the [c]ourt, it is not only the result but also those portions of the opinion necessary to that result by which we are bound"). And it is these holdings that devastate the majority's analysis.

Bottom line: Reading the record in the light most favorable to the judge's ruling, and keeping in mind that his decision must stand if any reasonable view of the evidence supports it, I believe the unreversed findings and the uncontested evidence establish—under controlling precedent—that Aiken was an "overnight guest" of Bonnett in a constitutional sense. Which again means Aiken had a legitimate expectation of privacy in the motel room and so could challenge the search. And because the majority (though conscientious) sees the matter differently, I respectfully (but unequivocally) *dissent*.