**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-4812

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

DERRICK ALAN DANIELS, JR.,

Defendant – Appellant.

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  Robert J. Conrad, Jr., District Judge.  (3:17-cr-00124-RJC-DSC-1)

Argued:  December 9, 2021                                      Decided:  July 25, 2022

Before RICHARDSON and RUSHING, Circuit Judges, and TRAXLER, Senior Circuit Judge.

Affirmed by published opinion.  Judge Richardson wrote the opinion in which Judge Rushing and Senior Judge Traxler joined.

**ARGUED:**  Joshua B. Carpenter, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Asheville, North Carolina, for Appellant.  Anthony Joseph Enright, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.  **ON BRIEF:**  Anthony Martinez, Federal Public Defender, Ann L. Hester, Assistant Federal Public Defender, FEDERAL DEFENDERS OF WESTERN NORTH CAROLINA, INC., Charlotte, North Carolina, for Appellant.  William T. Stetzer, Acting United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charlotte, North Carolina, for Appellee.

RICHARDSON, Circuit Judge:

Derrick Daniels challenges the admissibility of a handgun found in a rental car he had been driving that was parked outside of his hotel. But Daniels lacked a legitimate expectation of privacy in the car because he introduced no evidence that he was in lawful possession of the car. So he could not challenge the search. We thus affirm the district court's denial of his motion to suppress the handgun.

## I.      Background

Derrick Daniels had multiple outstanding arrest warrants, and police were actively searching for him. So they obtained search warrants to track him using his cell-phone location data. After using that data to find him, officers saw Daniels driving a gray Dodge Charger with a Florida license tag. Running the license plate on the vehicle revealed that the Charger was an Enterprise rental car.

The next morning, officers tracked Daniels to a Baymont Inn & Suites and found the Charger parked out front. The desk clerk directed the officers to Daniels' hotel room, where they arrested Daniels based on the outstanding arrest warrants.

As Daniels was walked out of the hotel, he passed the Charger. An officer asked Daniels if he knew anything about the vehicle without having provided a *Miranda* warning. Daniels responded that "he didn't know anything about a Dodge Charger." J.A. 142.

Knowing the Charger was a rental vehicle, an officer called Enterprise about the car. The officer spoke with an Enterprise risk manager. The risk manager testified that the officer told her "they were making an arrest of the person who had [Enterprise's] vehicle and asked what [she] would like to do with the vehicle." J.A. 217. Upon checking the

2

rental agreement, the risk manager discovered that Daniels did not rent the car and was not listed as an authorized driver.[1]  Instead, the authorized renter was Erica Baldwin.  Under the rental agreement, Enterprise had the right to seize the car without notice to the renter whenever it discovered that an unauthorized person drove the vehicle.  So the risk manager sent a tow truck to return the vehicle to Enterprise's service center.

Officers followed the tow truck to Enterprise to be present if an Enterprise employee discovered contraband.  At the service center, Enterprise's employees consented to a search of the vehicle.[2]  After a handgun was discovered under the driver's side floor mat, a team of crime-scene specialists arrived to collect the firearm, and DNA analysis on the gun revealed Daniels' DNA.

Based on the gun recovered from the Charger, a grand jury indicted Daniels for possession of a firearm by a felon under 18 U.S.C. § 922(g)(1).  Daniels moved to suppress the evidence from the Charger on the theory that it was obtained from an unlawful search

---

[1] In briefing below, Daniels' counsel alleged that Daniels paid the deposit for the rental car, but no evidence was introduced to support that claim.

[2] The officers and Enterprise employees offered somewhat different, and at times contradictory, accounts of the sequence of events at Enterprise's service center and exactly when consent was given.  But acknowledging the "discrepancy between the witnesses as to how that search transpired, [and] the mechanics of the search" the district court still made a factual finding that "Enterprise had the authority to give consent and gave valid consent." J.A. 264–65.  So we defer to the district court's factual finding.  And although Daniels argues that Enterprise's consent was not valid, he does not argue that Enterprise did not give consent.

in violation of the Fourth Amendment.  A suppression hearing followed.[3]  Finding that Daniels had abandoned any legitimate expectation of privacy in the Charger, that Enterprise had given valid third-party consent to the search, and that the Government would have inevitably discovered the gun in the Charger, the district court denied Daniels' motion to suppress.  Daniels then entered a conditional plea, preserving his right to appeal the adverse ruling on his suppression motion.

## II.    Discussion

The Fourth Amendment guards "against unreasonable searches and seizures."  U.S. Const. amend. IV.  To challenge the legality of a search under the Fourth Amendment, a criminal defendant must prove that he has a "legitimate expectation of privacy" in the item or area searched.  *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980).  "A person who is aggrieved by an illegal search . . . of a third person's premises or property has not had any of his Fourth Amendment rights infringed."  *Rakas v. Illinois*, 439 U.S. 128, 134 (1978).

To determine whether a legitimate expectation of privacy exists, we look to "concepts of real or personal property law or to understandings that are recognized and permitted by society."  *Byrd v. United States*, 138 S. Ct. 1518, 1527 (2018) (quoting *Rakas*,

---

[3] At first, the district court denied Daniels' suppression motion without a suppression hearing, under then-prevailing precedent that unauthorized drivers of a rental car "had no legitimate privacy interest in the car."  J.A. 61–62 (citing *United States v. Wellons*, 32 F.3d 117, 119–20 (4th Cir. 1994)).  But before he was sentenced, the Supreme Court rejected *Wellons*' "per se rule" that "drivers who are not listed on rental agreements always lack an expectation of privacy in the automobile based on the rental company's lack of authorization alone."  *See Byrd v. United States*, 138 S. Ct. 1518, 1526–27, 1531 (2018).  So Daniels moved the district court to reconsider its prior ruling.  Following a suppression hearing, the district court again denied Daniels' suppression motion.  It is from that second denial that Daniels now appeals.

439 U.S. at 144 n.12) (noting that the inquiry is not amenable to "a single metric or exhaustive list of considerations"). Applying those principles, the Supreme Court has recognized that a driver in "lawful possession" of a rental car may have such a legitimate expectation of privacy, even if the rental agreement does not authorize that driver to drive the car. *Id.* at 1531.

To prevail in a Fourth Amendment challenge, the criminal defendant bears the burden of establishing a legitimate expectation of privacy in the searched property, at the time of the search, by a preponderance of the evidence. *United States v. Castellanos*, 716 F.3d 828, 833–35 (4th Cir. 2013). In *Castellanos*, the defendant sought to suppress evidence of cocaine that was found in the gas tank of a car, but this Court held that he lacked a legitimate expectation of privacy in the car because he "did not introduce any evidence to show that he owned the [car] at the time [of] the warrantless search or had permission to use the vehicle." *Id.* at 831. We noted the defendant's failure to prove ownership through a title, bill of sale, vehicle registration, or "anything else," and the failure to prove lawful possession through evidence that anyone "had granted him permission to use the vehicle . . . or any other right of any kind to the vehicle." *Id.* at 834. Because the defendant "bore the burden of proof" but "offered no evidence that he had any such interest," we affirmed the denial of the suppression motion. *Id.*

So too here. Under *Byrd*, an unauthorized driver of a rental car only has a legitimate expectation of privacy in a car when (1) they possess the rental car and (2) that possession is "lawful." 138 S. Ct. at 1531. And here, as in *Castellanos*, Daniels had the burden of producing evidence that he had possession and that his possession was lawful. Although

Daniels' counsel claimed at the suppression hearing and in his briefs that Baldwin allowed him to drive the car, Daniels did not introduce any evidence at the suppression hearing to support that claim—not even a statement of his own to suggest that he had permission. Counsel's unsupported claim is not evidence.  Because Daniels did not put forward any evidence that would support his claim that Baldwin let him use the car—or that he "lawfully" possessed the rental car by other means—he fails to carry his burden that he had a legitimate expectation of privacy in the rental car.  Thus, his challenge of the search that led to the discovery of the gun must fail.[4]

*          *          *

In suppression hearings, criminal defendants have the burden of putting forward evidence to support all elements of their reasonable expectation of privacy.  But here, Daniels did not introduce any evidence to support his lawful possession of the Charger.  So the district court's judgment is therefore

AFFIRMED.

---

[4] The government presents several alternative arguments that would independently support denying the motion to suppress.  But we need not address those arguments here.