**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 14-4695**

———————

UNITED STATES OF AMERICA,

              Plaintiff - Appellee,

      v.

KENNETH RUSH,

              Defendant - Appellant.

———————

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (2:14-cr-00059-1)

———————

Argued: September 17, 2015      Decided: December 21, 2015

———————

Before WYNN, FLOYD, and THACKER, Circuit Judges.

———————

Reversed and remanded by published opinion. Judge Wynn wrote the opinion, in which Judge Floyd and Judge Thacker joined.

———————

**ARGUED**: Rhett Hunter Johnson, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. John J. Frail, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee. **ON BRIEF:** Christian M. Capece, Federal Public Defender, Jonathan D. Byrne, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Charleston, West Virginia, for Appellant. R. Booth Goodwin II, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

———————

WYNN, Circuit Judge:

A law enforcement officer knowingly lied to Defendant Kenneth Rush by claiming that he had a warrant to search the apartment where Defendant was staying when no warrant in fact existed. The district court held that the officer's false statement stripped Defendant of his Fourth Amendment right to object to the search, but declined to suppress evidence obtained from the search. On appeal, Defendant argues that the evidence should have been suppressed. We agree and therefore reverse the district court and remand.

I.

On the morning of May 23, 2012, Marquita Wills called the Charleston, West Virginia, Metropolitan Drug Enforcement Network Team (MDENT) to request that they remove Defendant from her apartment. Ms. Wills suspected that Defendant, who had been staying with her for the previous two nights, was dealing drugs from her apartment. Lieutenant A.C. Napier and Sergeant William Winkler of the Charleston Police Department immediately arranged to meet Ms. Wills at a local business. There, Ms. Wills gave them the key to her apartment and signed a consent form authorizing the police to search it. Ms. Wills told them that she was afraid of Defendant because his family had a history of violence, but she did not indicate that he had committed any crimes against her or threatened her.

2

Sergeant Winkler and Lieutenant Napier went directly to Ms. Wills's apartment, where they were joined by Detective Ryan Higginbotham, Detective Keven Allen, Detective Tagayun, and Officer John Halstead. They opened the apartment door with the key and entered with their weapons drawn, yelling "police" to announce their presence. Detectives Allen and Higginbotham found Defendant asleep in the bed in the master bedroom. They handcuffed Defendant, brought him into the living room, and sat him on the couch. After ensuring that no one else was in the apartment, they removed the handcuffs.

At some point in this series of events, Defendant asked, "Can you tell me what's going on? Why are you all here?" J.A. 75. Sergeant Winkler responded that the officers had a warrant to search the apartment, even though he knew that was not true. Sergeant Winkler testified at the suppression hearing that he lied about having a search warrant to protect Ms. Wills.

After informing Defendant that they had a search warrant, the officers searched the apartment and found crack cocaine and digital scales. Defendant was cooperative throughout the search. When questioned by Detective Allen, he admitted that the drugs belonged to him and that he had sold crack cocaine from Ms. Wills's apartment. Defendant also gave the police information about the supplier who sold him the drugs and signed

3

a statement, written by Lieutenant Napier, recording his answers to Detective Allen's questions.

After completing the search and questioning Defendant, the officers left, without arresting Defendant or removing him from Ms. Wills's apartment. At the officers' request, Defendant voluntarily visited the MDENT office later that day to answer additional questions about his supplier. After Defendant answered their questions, the officers again did not arrest him; instead, they simply allowed him to leave.

Defendant was ultimately arrested and charged with one count of knowingly and intentionally possessing with intent to distribute twenty-eight grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1). Defendant moved in limine to suppress the evidence obtained from the warrantless search of Ms. Wills's apartment.

Despite finding a constitutional violation, the district court denied the motion to suppress. As the district court noted, by "inaccurately claiming that the search was supported by a warrant, . . . law enforcement materially impaired [Defendant]'s right, under [Georgia v.] Randolph, [547 U.S. 103 (2006),] to object when law enforcement entered the home." United States v. Rush, No. 2:13-00151, 2014 WL 989198, at *4 (S.D. W. Va. Mar. 13, 2014). Nevertheless, the court held that the officers did not intentionally impair Defendant's rights,

4

but instead lied about the warrant "in a justifiable effort to protect Ms. Wills." Id. at *7. The court also determined that suppressing the evidence would have little deterrent effect on police misconduct because there was "a vanishingly low likelihood of future recurrences" of the same behavior. Id.

Following the denial of his motion to suppress, Defendant agreed to plead guilty to one count of possessing with intent to distribute an unspecified quantity of crack cocaine. Defendant pled guilty and was sentenced to twelve months and one day in prison, followed by three years of supervised release. In the plea agreement, Defendant reserved the right to appeal the district court's decision on his motion to suppress. Defendant then timely filed a notice of appeal.

When reviewing a ruling on a suppression motion, we review the district court's legal determinations de novo and factual findings for clear error. United States v. Davis, 690 F.3d 226, 233 (4th Cir. 2012). And if the motion has been denied, we review the evidence in the light most favorable to the government. Id.

## II.

No one contests the fact that Defendant's Fourth Amendment rights were violated.[1] The parties disagree only about whether

---

[1] As the district court recognized, even though Ms. Wills consented to the search of her apartment, Defendant had a right

5

the resulting evidence should have been suppressed. Defendant argues that the district court erred in finding that Sergeant Winkler acted in good faith to protect Ms. Wills. Defendant asserts that the good-faith exception to the exclusionary rule is inapplicable because Sergeant Winkler deliberately lied about the existence of a search warrant and could not have had an objectively reasonable belief that such a lie was lawful. We agree.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment does not "expressly preclud[e] the use of evidence obtained in violation of its commands." United States v. Leon, 468 U.S. 897, 906 (1984). However, courts have developed a "prudential" doctrine that—under certain circumstances—prohibits evidence obtained through an unconstitutional search from being used against the subject of the search in a criminal trial. Pa. Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 363 (1998).

The exclusionary rule "is 'not a personal constitutional right,' nor is it designed to 'redress the injury' occasioned by

---

to object to the search because he was a present co-occupant of the apartment. See Randolph, 547 U.S. at 106. The officers unconstitutionally denied Defendant the opportunity to object to the search by falsely stating that they had a warrant. See Bumper v. North Carolina, 391 U.S. 543, 548–50 (1968).

6

an unconstitutional search." Davis v. United States, 131 S. Ct. 2419, 2426 (2011) (quoting Stone v. Powell, 428 U.S. 465, 486 (1976)). Instead, the rule's purpose "is to deter future Fourth Amendment violations." Id.

Exclusion is appropriate when the deterrence benefits of suppression outweigh the "substantial social costs" of excluding the evidence. Leon, 468 U.S. at 907. As the Supreme Court has explained:

> When the police exhibit "deliberate," "reckless," or "grossly negligent" disregard for Fourth Amendment rights, the deterrent value of exclusion is strong and tends to outweigh the resulting costs. But when the police act with an objectively "reasonable good-faith belief" that their conduct is lawful, or when their conduct involves only simple, "isolated" negligence, the "'deterrence rationale loses much of its force,'" and exclusion cannot "pay its way."

Davis, 131 S. Ct. at 2427–28 (internal citations omitted) (quoting Herring v. United States, 555 U.S. 135, 137, 144 (2009), and Leon, 468 U.S. at 908 n.6, 909, 919).

The Supreme Court has applied the good-faith exception to certain cases of "isolated" negligence. Herring, 555 U.S. at 137. In Herring, the police officers who conducted the search were incorrectly informed by the police department in a neighboring county that there was an outstanding warrant for the defendant's arrest. Id. at 137–38. Since the Fourth Amendment violation arose out of "isolated negligence attenuated from the arrest," id. at 137, the Supreme Court held that suppressing the

7

evidence would have only a marginal deterrent effect on police behavior and thus was not warranted, id. at 147.

Additionally, the Supreme Court has applied the good-faith exception "when the police act with an objectively 'reasonable good-faith belief' that their conduct is lawful." Davis, 131 S. Ct. at 2427 (quoting Leon, 468 U.S. at 909). For instance, in Leon, police officers conducted a search pursuant to a facially valid search warrant. 468 U.S. at 902. The district court later ruled that the search warrant was unsupported by probable cause and thus invalid. Id. at 903. Although the search violated the Fourth Amendment, the Supreme Court declined to suppress the evidence because the officers' reliance on the warrant was objectively reasonable. Id. at 926; see also Massachusetts v. Sheppard, 468 U.S. 981, 990–91 (1984).

Similarly, the Supreme Court applied the good-faith exception when police officers reasonably relied upon records indicating that there was an outstanding arrest warrant for the defendant, even when the records were later found to be inaccurate. Arizona v. Evans, 514 U.S. 1, 15–16 (1995). The erroneous information was part of a database maintained by employees of the Clerk of Court. Id. at 4. The Supreme Court held that the evidence should not be suppressed because "the exclusionary rule was historically designed as a means of

deterring police misconduct, not mistakes by court employees." Id. at 14.

The present case bears no resemblance to the previous applications of the good-faith exception. Here, the search was unconstitutional due to the intentional decision of Sergeant Winkler to tell Defendant that there was a search warrant, even though he knew that his statement was untrue. This is not a case of negligence, or reasonable reliance on faulty information. See Herring, 555 U.S. at 137; Evans, 514 U.S. at 15–16. Rather, it is a case of a deliberate lie.

The good-faith exception, therefore, would apply in this case only if the officers held an objectively reasonable belief that it was lawful to conduct the search after lying about the existence of a warrant. See Davis, 131 S. Ct. at 2427–29. In other words, we must determine objectively "whether a reasonably well trained officer would have known that the search was illegal." Herring, 555 U.S. at 145 (quoting Leon, 468 U.S. at 922 n.23).

Here, there can be no doubt that a reasonable officer would know that deliberately lying about the existence of a warrant would violate Defendant's Fourth Amendment rights. Indeed, courts have long taken a negative view of law enforcement misleading the public about having valid warrants. In the seminal opinion Bumper v. North Carolina, 391 U.S. 543, 546–47

9

(1968), for example, the police falsely told the defendant's grandmother that they had a warrant to search her home, and believing them, she did not object to the search. The Court noted that "[w]hen a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search." Id. at 550. As such, any "consent" given after the officer has asserted that he possesses a warrant is not valid. Id. at 548. The Bumper Court held that the officers violated the Fourth Amendment and that the evidence should have been suppressed. Id. at 550; see also, e.g., United States v. Saafir, 754 F.3d 262, 266 (4th Cir. 2014) ("A search or seizure is unreasonable and therefore unconstitutional if it is premised on a law enforcement officer's misstatement of his or her authority."); Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (holding that consent given by a suspect who was falsely told that the FBI had a search warrant was invalid).

Further, we find instructive the Sixth Circuit's decision in United States v. Shaw, 707 F.3d 666 (6th Cir. 2013). In Shaw, officers had an arrest warrant for a suspect residing at 3171 Hendricks Avenue in Memphis, Tennessee. Id. at 667. When the officers arrived at the address, they found two houses labeled 3170 Hendricks Avenue and none with the 3171 address. Id. The officers approached one of the homes (which was

10

actually 3170 Hendricks Avenue) and told the woman who answered the door that they had a warrant "for this address." Id. The woman then allowed the officers to search the home, which led to the discovery of illegal drugs and the arrest of one of the occupants. Id. Although the officers had a "fifty-fifty chance of being right," id. at 668, they ultimately were incorrect and "obtained entry into the wrong house based on a false pretense," id. at 669. The Sixth Circuit held that the officers violated the Fourth Amendment and excluded the evidence obtained through the search. Id. at 669–70. The Sixth Circuit underscored that "so long as there is an exclusionary rule, it seems safe to say that it will apply to officers who enter and remain in a house based on false pretenses." Id. at 670.

At the time of the search at issue here, Sergeant Winkler had over sixteen years of experience with the Charleston Police Department. Sergeant Winkler knew with certainty that he did not possess a search warrant, but deliberately chose to tell Defendant otherwise. An objectively reasonable officer with Sergeant Winkler's level of experience would have known that consent to search is not valid if given after the police falsely claim to have a search warrant. See Herring, 555 U.S. at 145 (noting that "a particular officer's knowledge and experience" may inform the analysis of whether the officer's action was objectively reasonable). Sergeant Winkler's action was

11

deliberate, contrary to long-standing precedent, and objectively unreasonable. In other words, it is precisely the type of action that the exclusionary rule seeks to deter.

The government nevertheless argues that the officers acted in good faith because they did not intend to violate Defendant's rights by claiming that they had a warrant; they sought only to protect Ms. Wills. Even if this were true—and the officers' behavior suggests it was not[2]—the subjective intent of the officers is of no import to our analysis. Herring, 555 U.S. at 145. Further, the Supreme Court has made clear that the good-faith exception applies only if the officers had an objectively reasonable belief that their conduct was lawful, and not merely preferable or more expedient than complying with the Fourth Amendment. Davis, 131 S. Ct. at 2427.

### III.

Excluding the evidence obtained through a deliberate lie on the part of law enforcement, as in this case, may well deter police officers from so violating the Fourth Amendment in the

---

[2] After searching Ms. Wills's apartment, the officers left Defendant there and chose not to arrest him either there or later that day at the MDENT office. Clearly, then, they did not see Defendant as a threat to Ms. Wills, nor did they face any exigency that could possibly justify their decision to search the apartment under false pretenses and without a warrant. See United States v. Yengel, 711 F.3d 392, 399 (4th Cir. 2013) (rejecting officers' justifications for a search when they were inconsistent with the officers' behavior at the time of the search).

12

future.    We  emphatically  agree  with  the  Sixth  Circuit's statement  that  "so  long  as  there  is  an  exclusionary  rule,  it seems  safe  to  say  that  it  will  apply  to  officers  who  enter  and remain  in  a  house  based  on  false  pretenses."    <u>Shaw</u>,  707  F.3d  at 670.    Accordingly,  we  reverse  and  remand.

<u>REVERSED AND REMANDED</u>

13