**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 19-1350**

LOREN VARNER,

Plaintiff - Appellant,

v.

MICHAEL ROANE, in his individual capacity,

Defendant - Appellee.

Appeal from the United States District Court for the Western District of Virginia, at Harrisonburg.  Elizabeth Kay Dillon, District Judge.  (5:17-cv-00080-EKD-JCH)

Argued:  October 28, 2020                          Decided: December 2, 2020

Before GREGORY, Chief Judge, WILKINSON, and KEENAN, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Chief Judge Gregory and Judge Keenan joined.

**ARGUED**:  Dallas S. LePierre, NDH LLC, Atlanta, Georgia, for Appellant.  Carlene Booth Johnson, PERRY LAW FIRM, PC, Dillwyn, Virginia, for Appellee.  **ON BRIEF:**  Mario B. Williams, NDH LLC, Atlanta, Georgia, for Appellant.

WILKINSON, Circuit Judge:

Appellant Loren Varner appeals the district court's rejection of his two claims alleging violations of the Fourth Amendment. For the reasons set forth herein, we affirm.

I.

Two incidents gave rise to this case. First, Varner alleged an unlawful seizure of his person. Varner's complaint states that he was having an alcoholic drink and lunch at a local restaurant. During this lunch, appellee Michael Roane, an Augusta County Deputy Sheriff, approached Varner and requested that he grab his jacket and leave the restaurant with him. Varner complied with the request, knowing that Roane was a police officer because Roane had previously arrested him on drug charges. Once they were outside the restaurant, Roane asked Varner to empty his pockets. After he found nothing, Roane patted down Varner. No incriminating items were found. Because Varner was drinking, Roane asked him to submit to a breath test. Varner stated he would not be driving and refused.

Second, Varner alleged an unlawful search of his automobile. After Roane patted down Varner, K-9 officer Jeremy Johnson approached Varner's car with a drug-sniffing dog named Zeke. Zeke and Johnson regularly trained and worked together. They together successfully completed testing in Police Narcotic Detection Training and obtained certification from the Virginia Police Canine Association. Johnson testified during a deposition that Zeke pressed his nose against a surface if he detected drugs underneath.

Both sides agree that Zeke gave a positive alert signifying he detected drugs inside Varner's car. Varner, who was standing away from the car with Officer Roane, alleges that Johnson manufactured this alert by smacking the side of his car, and that Zeke then gave

2

his alert by jumping up and placing his paws on the vehicle. Varner also alleges Zeke displayed some erratic behavior by veering toward the police cars sitting nearby Varner's vehicle. Officer Johnson testified that Zeke gave his positive alert by pressing his nose against the car while all four of his paws were on the ground, and that this was done on the side of the car facing away from where Varner and Roane were standing. Johnson then reported Zeke's positive alert over the police radio to members of his drug task force and the local police department. No drugs were found during the search of the car.

## II.

Varner filed two damages claims under 42 U.S.C. § 1983 for Fourth Amendment violations against Officer Roane in his personal capacity. Roane moved to dismiss both claims, arguing Varner failed to plead constitutional violations and that he was protected by qualified immunity. The district court dismissed Varner's claim that he had been unlawfully seized during the pat down outside the restaurant. In an oral order, it reasoned that Varner had failed to allege facts sufficient to demonstrate the encounter was anything but consensual; the complaint therefore did not adequately plead a Fourth Amendment violation. *Varner v. Roane*, No. 5-17-cv-00080, 2019 WL 982870, at *1 (W.D. Va. Feb. 28, 2019).

After discovery, Roane moved for summary judgment on the remaining Fourth Amendment claim. The district court granted the motion, thus disposing of the entire case. The district court found there was no evidence from which a reasonable jury could conclude that Officer Johnson had manufactured Zeke's positive alert. *Id.* at *3. The court noted that Varner relied purely on his own testimony that Johnson had slapped the side of

3

the car and that Zeke had subsequently jumped and placed his paws on the car. *Id.* at *4.

The district court reasoned that Varner had failed to rebut Johnson's testimony that Zeke

alerted by placing his nose on the car. *Id.* The district court summarized the facts as follows:

> Varner still has not presented any facts, based on personal knowledge, to dispute that the dog alerted by pressing his nose against the vehicle and pointing, not by jumping. Additionally . . .Varner testified that he could not see what occurred right before the "smack" or on the passenger side of the vehicle, where Zeke alerted according to Johnson. Thus, Varner cannot dispute that the alert occurred as Johnson described it. Johnson's undisputed testimony, then, establishes probable cause for the subsequent search of his vehicle.

*Id.* As for Varner's insistence that it was the smack that led to the positive alert, the district

court concluded that did not create a genuine dispute of material fact because "Varner has

no training or expertise in how K-9 dogs alert generally, let alone any knowledge of how

Zeke, in particular, alerts." *Id.* The district court also briefly stated that, even if a Fourth

Amendment violation were demonstrated, Roane would be protected by qualified

immunity. *Id.* at *5.

## III.

## A.

On appeal, Varner argues that he did not consent to Officer Roane's search of his

person outside the restaurant. We review *de novo* a dismissal for failure to state a claim,

taking all plausible facts pleaded by the nonmoving party as true. *Kerr v. Marshall Univ.*

*Bd. of Governors*, 824 F.3d 62, 71 (4th Cir. 2016).

The Fourth Amendment states that "[t]he right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures, shall not

4

be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. A person is seized within the meaning of the Fourth Amendment "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968).

A person is not unlawfully searched or seized when he consents to the encounter. *Florida v. Bostick*, 501 U.S. 429, 434, 439 (1991). No seizure implicating the Fourth Amendment occurs unless, taking into account all of the circumstances surrounding the encounter, an objectively reasonable person would have believed "that he was not at liberty to ignore the police presence and go about his business." *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988).

American law on whether a seizure is consensual accounts for two principles. On the one hand, our law does not permit law enforcement officers to roam around and constrain people without justification. A country defined by such suspicionless seizures would be a police state with all the citizen mistrust and unrest attendant thereto. The rules thus give Americans security and protect them from being arbitrarily targeted by the authorities. This encapsulates "a set of values reflecting society's deeply felt belief that the criminal law cannot be used as an instrument of unfairness, and that the possibility of unfair and even brutal police tactics poses a real and serious threat to civilized notions of justice." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973). And the police may not circumvent that important constitutional safeguard by coercing consent through "implied threat or covert force." *Id.* at 228.

On the other hand, law enforcement officers can approach people in the normal course of duty and ask to speak with them. This is essential for the police to do their job. Many individuals are willing to speak to the police because they "know that their [cooperation] enhances their own safety and the safety of those around them." *United States v. Drayton*, 536 U.S. 194, 205 (2002). Such voluntary conversations between citizens and officers can take place because "[w]ithout such investigation, those who were innocent might be falsely accused, those who were guilty might wholly escape prosecution, and many crimes would go unsolved." *Schneckloth*, 412 U.S. at 225. These conversations, if respectfully handled, can promote trust and mutual regard, giving the public greater confidence in law enforcement. Courts must therefore be careful not to discourage voluntary interactions that could assist officers in appreciating the humanity of those they encounter on their beats. The Fourth Amendment need not presume an adversarial relationship between police officers and the communities they protect.

As noted, this claim comes to us as a challenge to a motion to dismiss, and our review is limited to the facts as alleged. Several factors convince us that Varner failed to allege facts in his complaint sufficient to draw into question the district court's ruling that Varner consented to his initial encounter with Officer Roane. First, Officer Roane did not make a show of authority to suggest that Varner had to speak with him. Officer Roane "did not brandish a weapon or make any intimidating movements." *Drayton*, 536 U.S. at 204. Roane did not use or threaten to use force, did not block Varner from leaving, did not restrain Varner, did not make any misrepresentation as to a warrant, and did not take any property from Varner. *See id.*

6

Second, Officer Roane did not accuse Varner of wrongdoing before asking to speak with him. If a police officer accuses someone of having committed a crime and then asks to speak with that person, that may well suggest lack of consent. *See United States v. Jones*, 678 F.3d 293, 300 (4th Cir. 2012). The absence of such an accusation weighs toward finding the encounter to be consensual. *See United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (plurality opinion) (explaining that an officer's "use of language or tone of voice indicating that compliance with the officer's request might be compelled" is highly relevant to determining whether a seizure is voluntary).

In response, Varner argues that Officer Roane did make a show of authority because he alleged in his complaint that Roane "commanded" him to exit the restaurant. J.A. 20. But this is a conclusory allegation, unsupported by detail. Varner alleged nothing about Officer Roane's tone of voice or anything about what Roane specifically said. If, for example, Roane said, "Let's go outside and talk," that could be interpreted either as a polite request or as a command. More detail is needed to tell the difference, and Varner needed to plead more to survive a motion to dismiss. Further, Varner argues that Roane singled him out from a group of individuals in the bar. But his complaint makes no mention of other individuals being present, and nothing in the complaint hints at Varner being singled out. This case is thus markedly different than *United States v. Jones*, 678 F.3d at 302, where the police followed the defendant in a car, parked the police car in a way to stop the parked defendant from leaving a private property, and then showed an interest only in him and not the other passengers who had been in the car. *Id.* at 302-03.

The Supreme Court has explained that the question of whether a person feels free to terminate a police encounter and leave is an objective one. *See Mendenhall*, 446 U.S. at 554; *United States v. Stover*, 808 F.3d 991, 995 (4th Cir. 2015). Because the application of the objective test indicates that the events at issue here were consensual, we affirm the district court's dismissal of this claim.

B.

Varner next argues that Roane unlawfully searched his car because of an alleged conspiracy between Officer Johnson (who is not a party to this case) and Roane to manufacture a positive alert by Zeke, the drug-sniffing dog. We review the district court's grant of summary judgment *de novo* to decide if a genuine dispute of material fact exists, drawing all reasonable inferences in favor of Varner. *See Glynn v. EDO Corp.*, 710 F.3d 209, 213 (4th Cir. 2013). Summary judgment must be granted "unless a reasonable jury could return a verdict for the nonmoving party on the evidence presented." *McLean v. Patten Cmtys., Inc.*, 332 F.3d 714, 719 (4th Cir. 2003).

Both parties acknowledge that the police can have a drug-sniffing dog circle a vehicle without individualized suspicion or a warrant. *See, e.g.*, *United States v. Jeffus*, 22 F.3d 554, 557 (4th Cir. 1994). And both parties agree that the police had probable cause to search Varner's car based on Zeke's positive alert. *See* Appellant Brief at 5. This concession is sensible because the Supreme Court has explained that "[i]f a bona fide organization has certified a dog after testing his reliability in a controlled setting, a court can presume . . . that the dog's alert provides probable cause to search." *Florida v. Harris*, 568 U.S. 237, 246-47 (2013). Zeke had proven himself reliable in field testing and had

8

been certified by the Virginia Police Canine Association. Because Zeke was manifestly a capable dog, the only question is whether the police manufactured Zeke's alert.

We conclude summary judgment was appropriate because Varner has failed to present evidence rebutting Officer Johnson's testimony that Zeke gave a legitimate alert. Officer Johnson testified that Zeke gave his positive alert by pressing his nose against the car while all four of his paws were on the ground, and that this was done on the side of the car *facing away* from where Varner and Roane were standing. Uncontroverted evidence shows that this is precisely how Zeke was trained to alert to drugs.

Varner's *ipse dixit* assertion that Zeke alerted when Johnson slapped the side of the car *facing him* is speculative and unsupported. Varner knew nothing about drug-sniffing dogs, nor about Zeke's training in particular. And he was not standing in a position where he could even see the alert that Officer Johnson testified occurred. His assertion that Zeke did not alert as Officer Johnson testified is not based on personal observation. Indeed, Varner admitted in a deposition that he could not see what Zeke was doing on the other side of the car. J.A. 454–55. Unsupported speculation cannot rebut Officer Johnson's testimony, based on personal observation and experience with Zeke, that Zeke alerted on the side of the car facing away from Varner. Moreover, there is nothing to suggest that Johnson and Roane were engaged in some sort of conspiracy to manipulate Zeke's behavior. We thus conclude that Varner has failed to create a genuine dispute of material fact, and we affirm the district court's grant of summary judgment. We need not reach the question of whether Officer Roane would be protected by qualified immunity.

9

## IV.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*