**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 23-4631

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

JOSE GABRIEL DURAN GARCIA,

Defendant – Appellant.

Appeal from the United States District Court for the District of South Carolina, at Spartanburg.  Donald C. Coggins, Jr., District Judge.  (7:21-cr-00523-DCC-1)

Argued:  December 10, 2025                    Decided:  March 5, 2026

Before DIAZ, Chief Judge, GREGORY, Circuit Judge, and Gina M. GROH, United States District Judge for the Northern District of West Virginia, sitting by designation.

Affirmed by unpublished opinion.  Judge Gregory wrote the opinion, in which Chief Judge Diaz and Judge Groh joined.

**ARGUED:**  Howard Walton Anderson, III, TRULUCK THOMASON LLC, Greenville, South Carolina, for Appellant.  Benjamin Neale Garner, OFFICE OF THE UNITED STATES ATTORNEY, Greenville, South Carolina, for Appellee.  **ON BRIEF:** Adair F. Boroughs, United States Attorney, Leesa Washington, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Columbia, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

GREGORY, Circuit Judge:

On an evening in November, two police officers stopped a bus for traffic law violations, asked the bus driver for consent to search the bus's luggage hold, and brought a drug-detection dog to sniff the open hold. After determining that the dog alerted, one of the officers searched a suitcase and recovered ten kilograms of cocaine. The police later recovered another ten kilograms of cocaine from an identical suitcase. Jose Duran Garcia was ultimately connected to the suitcases and charged with cocaine possession, among other offenses. After the district court denied Duran's motion to suppress the evidence recovered from the search, Duran pleaded guilty to the offenses charged. He now appeals the district court's denial of his motion to suppress.

For the reasons below, we affirm the district court's judgment.

I.

A.

Two police officers with the Duncan Police Department—Officers Wright and Bembenek—stopped a Wanda Coach bus traveling from Atlanta to New York for speeding and failure to maintain a single lane of traffic. During the stop, Officer Bembenek asked the bus driver whether they could open up and search the bus's exterior luggage hold. The bus driver consented.[1] Officer Wright then had a drug dog, Kaos, sniff the bus's luggage hold while Officer Wright wrote the bus driver a traffic ticket. Officer Wright testified that

---

[1] On appeal, neither party challenges the district court's factual finding that the bus driver consented to the officers' search of the bus luggage hold.

2

law enforcement did not have any particular reason to "believe that the bus was involved in illegal activities" before Kaos's sniff. J.A. 288.

Kaos was trained to alert handlers to the presence of drugs by sitting down after he sniffed. Before Kaos began sniffing, Officer Wright had him sit down on the road behind the bus. Officer Wright then brought Kaos to the luggage hold, which was open and contained a pile of approximately fifteen pieces of luggage in a confined area. Kaos was taken past the luggage compartment twice, but he did not sit down. Even so, Officer Wright determined that Kaos had alerted him to the presence of drugs based on his assessment of Kaos's "breathing," "walking speed," and the speed and "pattern" of Kaos's tail. J.A. 253.

After receiving Kaos's alert, the officers searched several bags in the luggage compartment until they uncovered ten bricks of cocaine in a black suitcase. Officer Wright then asked the bus passengers to exit the bus and claim their luggage. Officer Wright asked Duran which bag was his as he exited the bus, but Duran responded that his only bag was inside the bus and he had no luggage stored in the compartment:

> Wright: Which bag is yours, sir?
>
> Defendant: Huh?
>
> Wright: Which bag is yours, sir?
>
> Defendant: I don't have a bag.
>
> Wright: You don't have any bag down south…?
>
> Defendant: No.

J.A. 50 at 07:43-08:06.

3

Shortly after that exchange, Officer Wright asked Duran whether he "checked any bags with [the bus company]," to which Duran replied, "no." J.A. 51 at 02:07-02:30.

After all the passengers claimed their luggage, only two black suitcases—one that the officers had already searched, and an identical unopened suitcase—were unclaimed. At that point, Officer Wright stated that he had reasonable suspicion to believe the suitcases were Duran's. Officer Wright searched Duran's pockets. The officers then searched the second suitcase and discovered an additional ten bricks of cocaine. Surveillance video from the bus terminal eventually revealed that Duran had placed those black suitcases in the luggage hold.

Duran was indicted on three counts: conspiracy with intent to distribute cocaine, interstate travel and transportation in aid of drug trafficking, and possession with intent to distribute cocaine.

## B.

After the suppression hearing, the district court determined that because Duran had no property or possessory interest in the commercial bus, he could not challenge the bus driver's consent to search the luggage hold. The court then held that Duran lacked standing to challenge the search of both suitcases because he had denied ownership of the luggage on the scene. The district court ignored the timing of Duran's disavowal of ownership, instead stating that the officers were not required to determine ownership of the luggage before their search. J.A. 624. The court likewise noted that Duran had never claimed ownership of the suitcases. Finally, the court determined that, even if Duran had standing to bring a Fourth Amendment challenge, suppression would still be inappropriate because

4

Kaos reliably alerted Officer Wright to the presence of drugs in the luggage hold and therefore created probable cause to search the luggage.

Duran ultimately pleaded guilty to conspiracy with intent to distribute cocaine and possession with intent to distribute cocaine. The district court accepted his conditional plea, which permitted him to appeal the denial of his motion to suppress. The district court ultimately imposed a sentence of 108 months plus a term of supervised release and a mandatory special assessment of $200.

## II.

We review legal conclusions in a motion to suppress de novo. *United States v. Castellanos*, 716 F.3d 828, 832 (4th Cir. 2013). We review a district court's factual findings—including its determination that property was abandoned—for clear error. *United States v. Ferebee*, 957 F.3d 406, 416 (4th Cir. 2020). When a motion to suppress "has been denied, we review the evidence in the light most favorable to the government." *United States v. Rush*, 808 F.3d 1007, 1010 (4th Cir. 2015).

## III.

On appeal, Duran challenges the district court's determination that he lacked standing to challenge the officers' search of the first suitcase, which was searched before any disclaimer by Duran, and the second suitcase, which was searched after Duran's disclaimer. Because Duran had not abandoned the first suitcase prior to the officers' search, the district court's determination that Duran lacked standing to challenge the search of that suitcase was clearly erroneous.

5

A.

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." *Whren v. United States*, 517 U.S. 806, 809 (1996). Fourth Amendment rights are "personal" and "must be invoked by an individual." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). To challenge the legality of a search, an individual must prove he has a "legitimate expectation of privacy" in the item or area searched. *Rawlings v. Kentucky*, 448 U.S. 98, 104 (1980). It is the defendant's burden to establish standing by a preponderance of the evidence. *United States v. Daniels*, 41 F.4th 412, 415 (4th Cir. 2022). But the government bears the burden of demonstrating that a warrantless seizure was reasonable. *United States v. Watson*, 703 F.3d 684, 689 (4th Cir. 2013); *see United States v. Denny*, 441 F.3d 1220, 1226 (10th Cir. 2006).

To determine whether a defendant has a reasonable expectation of privacy in property, we ask "whether that person claims an ownership or possessory interest in the property, and whether he has established a right or taken precautions to exclude others from the property." *Castellanos*, 716 F.3d at 833–34 (citing *United States v. Rusher*, 966 F.2d 868, 875 (4th Cir. 1992)). An individual who abandons property relinquishes their privacy interest in the property and lacks standing to challenge a search. *Ferebee*, 957 F.3d at 413. We assess an individual's standing to challenge a search at the time of the search. *United States v. Smith*, 21 F.4th 122, 132–33 (4th Cir. 2021).

B.

First, we agree with the district court that Duran abandoned the second suitcase when he twice disavowed ownership of the suitcases before the officers searched it. *See*

6

J.A. 267; J.A. 624.   Therefore, he lacks standing to challenge the search of the second suitcase.[2]

But we hold that the district court clearly erred in determining that Duran abandoned the first suitcase.  Again, a defendant's standing is assessed at the time of the officer's search.  *Smith*, 21 F.4th at 132–33.  Because the search of the first suitcase occurred before Duran's disavowal, J.A. 50–51, the officers had no indication that anyone disclaimed the suitcases prior to their initial search.  What's more, it was the government's burden to establish that the officers' warrantless search of the first suitcase was permissible.  So though a district court's determination that a defendant "abandoned his privacy interest" in certain property is "a finding of fact," *Ferebee*, 957 F.3d at 416, that determination was "against the clear weight of the evidence" here.  *United States v. Mayberry*, 125 F.4th 132, 145 (4th Cir. 2025), *cert. denied*, 145 S. Ct. 2722 (2025) (internal citations omitted).

Additionally, Duran maintains standing to challenge the search of the first suitcase. In his post-suppression hearing memorandum, Duran pointed to the government's evidence connecting Duran to the suitcases:  the surveillance video footage of Duran loading the two suitcases into the bus's luggage compartment at the Atlanta bus terminal.  *See* J.A. 196, 301–02.  Indeed, the government pointed to that footage to establish Duran's "possession" of or "control" over the suitcases.  *United States v. Rose*, 3 F.4th 722, 727 (2021).  This

---

[2] We reject Duran's argument that his statement disavowing ownership of the suitcases should have been suppressed.  Duran did not need to be *Mirandized* before he was questioned because the circumstances of the officers' questioning did not constitute custodial interrogation.  *See United States v. Leggette*, 57 F.4th 406, 410 (4th Cir. 2023) ("[S]o long as a defendant is not 'in custody,' then statements made during an interrogation remain admissible, even if the defendant were not given *Miranda* warnings.").

surveillance footage suffices to establish that Duran maintained an ownership or possessory interest in the suitcases and accordingly maintained a reasonable expectation of privacy in the suitcases.[3]  *See Bond v. United States*, 529 U.S. 334, 336 (2000) (recognizing that an individual possesses a privacy interest in a bag they carry onto a bus).

Duran therefore has standing to challenge the search of the first suitcase.

IV.

We now turn to the merits of Duran's Fourth Amendment claim.  Neither party disputes on appeal that the officers stopped the bus pursuant to a lawful traffic stop, received consent from the bus driver to search the bus's luggage hold, and permissibly deployed Kaos to sniff the hold.  *See United States v. Branch*, 537 F.3d 328, 336–37 (4th Cir. 2008) (noting that because a dog sniff is not a search, its use need not be justified during a lawful traffic stop).  Instead, Duran asks us to consider whether Kaos's alert created probable cause to search his suitcase.  We hold that the district court's determination that Kaos alerted was not clearly erroneous, so it provided probable cause to conduct the warrantless search.

A.

A warrantless search or seizure is presumptively unreasonable under the Fourth Amendment, subject only to certain "specifically established and well-delineated

---

[3] For the first time on appeal, Duran argues that he has a common-law property interest in the luggage as a bailee.  We need not address this argument, both because the record establishes that Duran maintained a legitimate expectation of privacy in the suitcases prior to his disavowal of ownership and because the argument is forfeited.  *See Richardson v. Clarke*, 52 F.4th 614, 625 (4th Cir. 2022) ("Generally, parties may not raise new arguments on appeal that were not first presented to the district court below, absent exceptional circumstances.").

exceptions." *Arizona v. Gant*, 556 U.S. 332, 338 (2009) (citing *Katz v. United States*, 389 U.S. 347, 357 (1967)).  One such exception involves searches of automobiles:  "[i]f a car is readily mobile and probable cause exists to believe it contains contraband," the Fourth Amendment permits a warrantless search.  *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996) (per curiam).  Once police have probable cause to conduct a search, they may search "every part of the vehicle and its contents that may conceal the object of the search." *United States v. Kelly*, 592 F.3d 586, 590 (4th Cir. 2010) (citing *United States v. Ross*, 456 U.S. 798, 825 (1982)).  This includes containers in vehicles.  *California v. Acevedo*, 500 U.S. 565, 570 (1991).

We have not explicitly determined that the automobile exception applies to buses. But the justifications for the automobile exception—the movability and lesser privacy expectations inherent in vehicles—apply with equal, if not greater, force to buses.  *See Kelly*, 592 F.3d at 590 (recognizing that this "lesser expectation of privacy" is because cars are "movable public objects" subject to "'pervasive schemes of regulation'") (citing *California v. Carney*, 471 U.S. 386, 392 (1985)).  We see no reason to depart from our sister circuits on this point.  *See United States v. Tuton*, 893 F.3d 562, 571 (8th Cir. 2018) (affirming denial of a motion to suppress evidence seized from luggage during a traffic stop of a bus); *United States v. Pina*, 648 F. App'x 899, 901 (11th Cir. 2016) (search of commercial bus and passengers' luggage was lawful under the automobile exception).

Of course, warrantless searches must still be supported by probable cause.  A reliable dog alert can create that probable cause.  *See United States v. Green*, 740 F.3d 275, 282 (4th Cir. 2014).  Probable cause to conduct a search based on a dog's alert exists when

9

the totality of the circumstances, "viewed through the lens of common sense, would make a reasonably prudent person think that a search would reveal contraband or evidence of a crime." *Florida v. Harris*, 568 U.S. 237, 248 (2013). Whether a drug detection dog has reliably alerted is a question of fact. *See United States v. Curry*, 478 F. App'x 42, 43–44 (4th Cir. 2012) (citing *United States v. Mason*, 628 F.3d 123, 130 (4th Cir. 2010)). The scope of a warrantless search may only be as broad as a magistrate, in accordance with the warrant particularity requirement, could authorize. *United States v. Ross*, 456 U.S. 798, 800 (1982).

In *Florida v. Harris*, the Supreme Court specified that "evidence of a dog's satisfactory performance in a certification or training program can itself provide sufficient reason to trust his alert." 568 U.S. at 246. The Court emphasized that a dog's reliability should be measured based on performance "in controlled testing environments," rather than its field performance. *Id.* Therefore, the Court counseled that, to challenge a dog's reliability, a defendant may "contest the adequacy of a certification or training program." *Id.* at 247. Evidence of the dog or handler's history in the field may also at times be relevant. *Id.* And even a generally reliable dog's alert may undermine probable cause if the handler cued the dog or "the team worked under unfamiliar conditions." *Id.*

In any case, the Court was clear: "[i]f the State has produced proof from controlled settings that a dog performs reliably in detecting drugs, and the defendant has not contested that showing, then the court should find probable cause." *Id.* at 248. *See Green*, 740 F.3d at 283 (applying *Harris* framework to hold that dog's 43% accuracy in the field, in conjunction with dog's training and certification record, sufficed to establish dog's

10

reliability). When a dog has been certified and otherwise proven generally reliable, "the only question is whether the police manufactured [the dog's alert]." *Varner v. Roane*, 981 F.3d 288, 294 (4th Cir. 2020).

B.

At the suppression hearing, the district court had the opportunity to consider testimony from Officer Wright and Duran's expert witness, Andre Falco Jimenez, regarding Kaos's non-final alert. Based on his experience handling Kaos, Officer Wright testified that Kaos had alerted but had not sit down because he "won't sit in the mud." J.A. 257. Mr. Jimenez, offered as an expert in dog training, handling, and identification of alerts for narcotics, provided his opinion that Kaos did not alert to the presence of narcotics at all. J.A. 345.

The district court also considered Kaos's training and certification records. Kaos was certified as a drug detection dog in 2020 and had been recertified every year since by the National Narcotic Detector Dog Association. His training records demonstrated that he had achieved 100% accuracy during his training in a controlled environment. Moreover, he had positively alerted to the presence of narcotics fourteen out of the nineteen times he was deployed in the field. Based on this record, the district court found Kaos "sufficiently reliable and that his positive alert for the presence of the odor of narcotics provided probable cause for the search of the luggage contained in the compartment." J.A. 626.

This district court's factual determination was not clearly erroneous. The district court was within its right to credit Officer Wright's testimony over Mr. Jimenez. *See United States v. Patiutka*, 804 F.3d 684, 689 (4th Cir. 2015) ("We owe particular deference

11

to a district court's credibility determinations, for it is the role of the district court to observe witnesses and weigh their credibility during a pre-trial motion to suppress.") (cleaned up). In conjunction with the evidence of Kaos's training record and continued certification, the district court justifiably concluded that Kaos alerted in this case. The record provides no reasonable basis for us to revisit the district court's factual determination on appeal, particularly here, where there was a robust record establishing Kaos's reliability.

Kaos's alert also sufficed to create probable cause. The video evidence reflects that Kaos alerted to the limited area of the luggage hold where the suitcases were located. *See Kelly*, 592 F.3d at 592 ("Probable cause is simply not so exacting a standard that it requires a dog to be able to pinpoint the location of drugs within a foot or two."). The limited geographic scope of Kaos's alert, alongside the record evidence of Kaos's reliability, justifies affirmance of the district court's probable cause determination.

While we recognize that the district court's factual finding was not clearly erroneous, the district court could have properly found Kaos's alert to be unreliable. Mr. Jimenez testified that Kaos did not alert to the presence of narcotics and that Officer Wright cued Kaos. He also questioned the reliability of Kaos's training record. The district court could have justly found that such testimony undermined the credibility of Kaos's alert.

And we agree with our sister circuit that reliance on such an alert does not provide law enforcement with unbounded authority to search for contraband. *See Tuton*, 893 F.3d at 571 ("This conclusion obviously does not mean that hundreds of bags in the luggage compartment of another bus could be searched without consent or a warrant based on a

12

drug dog's general alert."). As always, we look to the totality of the circumstances to determine whether probable cause exists in a specific case. *Harris*, 568 U.S. at 244.

*       *       *

The district court did not clearly err in finding that Kaos alerted to the presence of narcotics. On this record, we see no reason to overturn the district court's decision finding probable cause.

For the foregoing reasons, we affirm the judgment of the district court.

*AFFIRMED*